Tim **GARLAND**, Appellant (Defendant below),

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 482S158.

Supreme Court of Indiana.

Feb. 16, 1983.

Gerald R. Thom, Jasper, for appellant.

Linley E. Pearson, Atty. Gen., Latrialle Wheat, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Tim Garland, was convicted by a jury of theft, a Class D felony, Ind.Code § 35–43–4–2 (Burns 1979 Repl.) and of being an habitual offender, Ind.Code § 35–50–2–8 (Burns 1979 Repl.) and was sentenced to the Indiana Department of Correction for a period of thirty-two years. His direct appeal raises the following four issues:

1. Whether there was sufficient evidence to support the verdict of the jury on the underlying felony;

2. Whether the court erred in admitting the co-defendant's plea bargain agreement;

3. Whether the court erred in permitting exhibits to be taken into the jury room during deliberations; and

4. Whether the habitual offender statute, as applied in this case, violates the Eighth Amendment of the United States Constitution.

A brief summary of the facts most favorable to the state shows that Paula and Jack Maxey, husband and wife, were the owners of a maroon, 1978, Oldsmobile Cutlass automobile. On February 10, 1981, Paula Maxey drove the car to her place of employment, North American Products Corporation, in Jasper, Indiana. She left the car at North American, giving the keys to Neil Mieras, president of North American, while Mrs. Maxey drove a company car to Indianapolis for a business trip. Although Mrs. Maxey intended to return to Jasper by 5:30 p.m. that same afternoon, she did not return until 7:30 p.m. because of poor weather. Because Mieras normally used the company car for his personal transportation and knowing that she might be delayed due to the weather, Mrs. Maxey phoned North American and gave Mieras permission to drive her car if she were not back by 5:30 p.m. At no time did Mrs. Maxey give anyone other than Mieras permission to drive her car.

Mieras drove the 1978 Cutlass to the American Legion Hall in Jasper. Around 6:30 p.m. he parked the car in front of the Hall, leaving the keys in the ignition. At approximately 9:15 p.m. he discovered that the car was missing.

At trial, co-defendant, Jeffrey Opel, testified that he and defendant had been walking around Jasper, talking about going to Vincennes, and decided to take a car. He testified that he and the defendant went to the American Legion to look for cars with keys in them. The defendant called out that he had found one and he picked Opel up in a "purplish-maroon Oldsmobile." Discovering that the car was low on gas, the defendant and Opel left the car in Monroe City, wiped their fingerprints off the car and hitchhiked to Vincennes. The car was recovered three days later and identified as the 1978 Oldsmobile belonging to the Maxeys.

**1182**

## I.

Defendant first contends that the state failed to establish a necessary element to prove theft of the automobile. Ind.Code § 35–43–4–2 (Burns 1979 Repl.) states:

"(a) A person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a class D felony."

The defendant alleges that the state has failed to prove beyond a reasonable doubt that the defendant exercised *unauthorized* control over the vehicle in question. The defendant contends that the state presented no evidence showing that Jack Maxey did not authorize the defendant to use the automobile.

In considering the sufficiency of the evidence, it is well settled that as a court of review, we will neither reweigh the evidence nor judge the credibility of witnesses. Rather, we look only to that evidence most favorable to the state and all reasonable inferences to be drawn therefrom. If there is substantial evidence of probative value to support the conclusion of the trier of fact, the judgment will not be disturbed. *Fielden v. State,* (1982) Ind., 437 N.E.2d 986; *Duffy v. State,* (1981) Ind., 415 N.E.2d 715; *Wofford v. State,* (1979) Ind., 394 N.E.2d 100.

Here there was evidence that Mrs. Maxey, an owner of the car, had possession and control of the vehicle on February 10, 1981. She gave permission to Mieras to use the car. Mieras retained possession and control of the car until he parked it at the American Legion the evening of February 10, with the keys in the ignition. At no time did either Mrs. Maxey or Mieras authorize anyone else to use the car.

The testimony of Jeffrey Opel shows that he and the defendant took a maroon Cutlass from the parking lot of the American Legion the evening of February 10. They took that particular car because the keys were in the ignition. The defendants later left the car in Monroe City where the Maxeys' car was recovered three days later.

Opel's testimony also shows that he and the defendant intended to take a car without consent of the owner and later wiped their fingerprints from the car to prevent their apprehension.

 This was evidence from which the jury could reasonably infer that the defendant was not authorized to use the Maxeys' car. Furthermore, the testimony of Jeffrey Opel is substantive evidence that neither he nor the defendant had authorization to take the vehicle. It is well settled that a person may be convicted based on the uncorroborated testimony of an accomplice. *Newman v. State,* (1975) 263 Ind. 569, 334 N.E.2d 684; *Glover v. State,* (1970) 255 Ind. 304, 263 N.E.2d 723; *Walker v. State,* (1934) 206 Ind. 232, 189 N.E. 127. The testimony of the co-defendant was substantial evidence of probative value to support the jury's verdict.

## II.

The defendant also contends that the court erred in admitting the plea bargain agreement between Jeffrey Opel and the state because the agreement referred to a recommended sentence for Opel of two years. The defendant argues that the jury could have inferred from the agreement that the defendant also would receive a two-year sentence and therefore be influenced in reaching their verdict.

We have held previously that the prosecutor has a duty to disclose any agreements between the witness and the state. *Campbell v. State,* (1980) Ind., 409 N.E.2d 568; *Newman v. State, supra:*

"Indiana has long recognized that in order for the jury to have all the facts and circumstances upon which to judge the credibility of a witness, the state must disclose any promises, grants of immunity or rewards offered in return for his testimony. The state, in fact, is under a continuing duty to disclose any rewards promised to any witness for testifying." *Campbell v. State,* (1980) Ind., 409 N.E.2d at 570.

Here the state's key witness was testifying because of the plea agreement. Therefore, it was essential that the jury know of the agreement in order to adequately judge the credibility of the witness. In *Newman v. State, supra,* this Court reversed the conviction of the defendant because the prosecutor had failed to disclose a leniency agreement with a prosecution witness who was also an alleged accomplice.

Although we have stated that there is no need to inform the jury of the penalties prescribed for a crime, *Debose v. State,* (1979) 270 Ind. 675, 389 N.E.2d 272, the court here did not instruct the jury of the prescribed penalties for theft or for the habitual offender statute. Rather, the court allowed the jury to hear and see the reward that the prosecution witness was receiving in exchange for his favorable testimony. Furthermore, there was no indication that the defendant would receive the same sentence as Opel. In fact, it is likely that the jury would conclude that the sentence for Opel was based on his cooperation and was not the regular prescribed penalty for theft. In addition, the trial court's final instructions admonished the jury that, in assessing the credibility of the witness, they should consider the fact that Opel had agreed to cooperate with the state *in consideration of leniency.* There was no error in admitting the plea agreement.

### III.

Next, the defendant contends that the court erred in permitting two exhibits to be taken into the jury room during deliberations. He argues that allowing the exhibits to be given to the jury after deliberations began was an abuse of the trial judge's discretion and denied him a fair trial. He also contends that allowing the plea bargain agreement to be taken into the jury room unduly prejudiced him. In *Thomas v. State,* (1972) 259 Ind. 537, 289 N.E.2d 508, Indiana adopted the ABA Standards Relating to Trial by Jury. These standards provide that the trial court may, in its discretion, allow the jury to take exhibits and writings to the jury room during delibera-

tions. In exercising this discretion, the trial court should consider:

" '(i) whether the material will aid the jury in a proper consideration of the case;

" '(ii) whether any party will be unduly prejudiced by submission of the material; and

" '(iii) whether the material may be subjected to improper use by the jury.' " 259 Ind. at 540, 289 N.E.2d at 509.

*See also Jackson v. State,* (1980) Ind., 411 N.E.2d 609; *Marsh v. State,* (1979) Ind., 393 N.E.2d 757.

Although defendant alleges that the exhibits would not aid the jury, would unduly prejudice him, and were subject to improper use, a review of the record fails to support these allegations. First, it is unclear which two exhibits were taken to the jury room. However, it is unlikely that the plea bargain agreement was included. The plea agreement was admitted for the defendant's prosecution for theft, not for the habitual offender prosecution. The record shows that two exhibits were taken with the jury during the habitual offender portion of the bifurcated trial. Only exhibits pertaining to the defendant's prior felony convictions were admitted during the habitual offender prosecution. Therefore, it is reasonable to conclude that the jury used those exhibits during their deliberations on the habitual offender charge.

Reviewing the three primary considerations stated above, it is clear that the trial court did not exceed its discretion. The prior convictions were properly admitted into evidence for the truth of the matter contained therein. These exhibits would aid the jury in determining whether the defendant was an habitual offender. Similarly, it is difficult to imagine how the jury could misuse the material in this instance. Finally, there is no reason to believe that the defendant was unduly prejudiced by the submission of the material.

Although it is the better practice not to interrupt the jury once deliberations have begun, the record does not show whether the jury was in fact interrupted. At one point the record indicates that the jury took

the exhibits *with* them. The defendant has failed to show that the jury was interrupted and, if interrupted, how long the jury had been deliberating before the interruption occurred. Viewing the record in the light most favorable to the state, we find no reversible error here.

### IV.

 The fourth issue raised by the defendant is that the habitual offender statute, as applied to him, is cruel and unusual punishment in violation of the Eighth Amendment. Initially, we note that both the United States Supreme Court and this Court have upheld recidivist statutes against cruel and unusual punishment arguments. *Rummel v. Estelle,* (1980) 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382; *Comstock v. State,* (1980) Ind., 406 N.E.2d 1164. However, the defendant argues that the mandatory thirty-year sentence is disproportionate to the seriousness of his crime. This Court has long recognized that the purpose of the habitual offender statute is to more severely penalize those persons whom prior sanctions have failed to deter from committing additional felonies. *Whitacre v. State,* (1980) Ind., 412 N.E.2d 1202; *Comstock v. State,* (1980) Ind., 406 N.E.2d 1164; *Norris v. State,* (1979) Ind., 394 N.E.2d 144. Here, the defendant was previously convicted of arson and child molesting. Given the purpose of our habitual offender statute we do not find that the penalty imposed is so grossly disproportionate to the offense committed as to constitute cruel and unusual punishment.

For all of the foregoing reasons, there was no trial court error and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C.J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.