**Larry Ray FLEMING, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 45S00-9009-CR-584.**

Supreme Court of Indiana.

Oct. 8, 1991.

Scott L. King Appellate Public Defender, Crown Point, for appellant.

Linley E. Pearson Atty. Gen., William E. Daily Deputy Atty. Gen., Indianapolis, for appellee.

KRAHULIK, Justice.

Larry Fleming received a sentence of 60 years after being convicted by a jury of commiting murder during the course of a gas station robbery. Fleming appeals that conviction, arguing, as his sole contention of error, that the evidence is insufficient to sustain the verdict. We begin by referring to the oft-cited standard of review in these cases. We will not "reweigh evidence or judge the credibility of witnesses," *Decker v. State* (1988), Ind., 528 N.E.2d 1119, 1125, rather we will consider only "evidence most favorable to the State and any reasonable inferences to be drawn therefrom." *Id.* The evidence to be considered in this review follows.

On the evening of May 3, 1989, Dwayne Henderson reported to work at a Hammond Amoco gas and service station. At approximately 11:45 p.m., his body was found by a patron of the service station. He had been shot in the back of the head three times and it was determined that $66.73 was missing.

Fleming became a suspect in the case on September 19, 1989, when Tracy Fox, Fleming's girlfriend for the past ten months, approached police informing them of a conversation she had had with Fleming earlier that summer. According to Fox, Fleming had confessed to her that he had murdered the gas station attendant. She stated that Fleming had detailed certain specifics of the crime, including the fact that he had shot Henderson three times, that immedi-

ately prior to the shooting, Henderson had offered Fleming his wallet, and that Fleming had taken approximately $66 during the course of the robbery. In fact, when Henderson's body was found by the police, his wallet was lying in close proximity to his left hand with his driver's license still in his hand. Additionally, the gas station owner testified that the amount taken during the robbery was kept secret from both the employees of the station and the public in general.

The testimony of a number of witnesses placed Fleming in the general proximity of the gas station at the approximate time of the crime. Witnesses testified that Fleming and a companion arrived at the home of John Lippie, which was located approximately a block and a half from the service station, between 9 and 10 p.m., and that they left about an hour later.

Fleming argues that the statement given by Fox to the police was motivated by a desire to seek revenge on Fleming after the termination of their relationship and by the possibility of receiving a substantial reward that was offered by the service station and Henderson's parents. Fleming argues that Fox could have learned the details of the crime by talking to either employees of the service station or to her uncle, with whom she was alleged to have agreed to split the reward. Fox's uncle allegedly visited the service station on many occasions and discussed the crime with the station's employees. Although Fox's uncle and other witnesses admit that much of the information regarding the crime was known by station employees, there is no direct evidence to suggest that Fox did not first hear this information from Fleming himself.

The jury viewed and heard the witnesses. They were fully aware of the existence of a reward. Additionally, they were aware of the circumstances of the relationship between Fox and Fleming. They were in the best position to assess the credibility of the witnesses and, from that, make their determination regarding Fleming's guilt or innocence. Sufficient evidence exists from which the jury could have determined that

it was Fox, and not Fleming, who was telling the truth in this matter, and that Fleming had murdered Henderson.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.