Richard WEAR, Appellant,

v.

STATE of Indiana, Appellee.

No. 71S00–9111–CR–928.

Supreme Court of Indiana.

June 12, 1992.

James F. Korpal, South Bend, for appellant.

Linley E. Pearson, Atty. Gen., Sue A. Bradley, Deputy Atty. Gen., Indianapolis, for appellee.

KRAHULIK, Judge.

Defendant Richard Wear was convicted by jury of murder, *Ind.Code* § 35–42–1–1(1), and found to be an habitual offender. Wear was sentenced to 80 years. The sole issue raised in this direct appeal is whether the evidence is sufficient to sustain his conviction.

Wear acknowledges that when reviewing a conviction for sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses; instead, we consider only the evidence most favorable to the verdict and all reasonable inferences to be drawn therefrom. *Fleming v. State* (1991), Ind., 579 N.E.2d 73, 74. It is the province of the jury to hear the testimony given by the witnesses and to assess the truth and veracity of each witness; the jury's resulting decision will be overturned by this Court only if such decision is based on testimony that is inherently improbable. *Johnson v. State* (1991), Ind., 580 N.E.2d 670, 671.

The facts presented at trial which are most favorable to the verdict include the following. At approximately 6:30 p.m. on February 14, 1990, the victim, Wilbert Floyd, was shot four times. One of those bullets lacerated his heart, causing his death.

During 1988 and 1989, Taneisha Perry dated Wear and was pregnant with his child in February 1990, at which time she was dating Floyd. During her relationship with Wear, she observed that he kept four guns in his home, including a .357 revolver, a .38 revolver, and a nine millimeter automatic. Police concluded that the bullets which struck the victim were shot from a gun of one of these sizes.

In February 1990, Wear and Floyd were involved in a scuffle at Floyd's workplace. Floyd defeated Wear in that encounter. On February 14, 1990, in response to teasing from his friends about losing the fight, Wear stated that he would kill Floyd in retaliation. Wear told other friends that he had previously plotted to attack Floyd on a specific occasion, but had been unable to carry out his plan. Wear had also informed Michael Martin, an acquaintance of Wear and the victim, that he intended to kill Floyd. In addition, a person who was incarcerated with Wear at the St. Joseph County Jail, where Wear was held pending trial of this case, testified that Wear told him he had shot someone with a gun after an argument over a woman.

On the evening of the 14th, Martin saw Floyd in a phone booth, and saw Wear

sitting in his car parked near the phone booth. Wear appeared to be watching Floyd in the phone booth. Martin returned to the area shortly thereafter, and observed that Floyd had finished his telephone conversation and returned to his automobile. Martin then drove past an alley where he observed Wear standing and holding a gun. Martin saw a flash of fire from the gun and, upon turning down the volume of his car radio, heard several more shots. Martin immediately drove around the corner where he observed that Floyd's car had run into a curb, and Floyd was slumped over in the front seat. As Martin went to summon assistance, he saw a man running away.

■ Wear claims that Martin's testimony was inherently incredible because of the following evidence. One man testified that he saw the shadow of a figure in the alley, but it was too dark to identify him. Other witnesses who were on the scene immediately after the shooting did not see Martin or his automobile in the area. Finally, a witness who claimed to have seen the shooting testified that the shots were fired while Wear was standing at or near the phone booth with Floyd, rather than in the locations that Martin identified. In addition, Wear offered alibi testimony that he had been with the mother of one of his children from approximately 5 to 7 p.m. on the day of the murder, and with his hairdresser from 7 p.m. onward, thus making it impossible for him to have committed the murder.

Citing *Forrester v. State* (1982), Ind., 440 N.E.2d 475, 485, Wear argues that the inconsistency between the testimony of Martin and the other witnesses makes his testimony inherently incredible, and that without that testimony there is insufficient evidence to convict him of murder. We do not agree.

Here, although it may be true that not all the testimony offered in this case is consistent and reconcilable, assigning the weight to be given to the testimony is within the province of the jury. The jury had the opportunity to observe the demeanor of the witnesses and decide whom to believe. We do not find Mr. Martin's testimony to be inherently incredible. Additionally, even if Martin's testimony were stricken, the testimony of the other witnesses provided sufficient evidence to affirm the conviction.

Accordingly, the judgment of conviction is affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.