Roger LAY, Appellant,

v.

STATE of Indiana, Appellee.

No. 73S00–9406–CR–564.

Supreme Court of Indiana.

Nov. 30, 1995.

Rehearing Denied March 7, 1996.

Alex R. Voils, Indianapolis, for Appellant.

Pamela Carter, Attorney General, Lisa M. Paunicka, Deputy Attorney General, Indianapolis, for Appellee.

SULLIVAN, Justice.

On December 12, 1993, in Shelby Superior Court, a jury convicted Roger Lay of Dealing in LSD within one thousand feet of a school,[1]

---

1. Ind.Code §§ 35–48–4–2(a) & (b)(2)(A) (1993)     (Dealing in a Schedule I, II, or III Controlled

a Class A felony, and found him to be an Habitual Offender.[2] On January 13, 1994, the trial court sentenced Lay to 35 years on the count of Dealing in LSD, enhancing the presumptive sentence of 30 years for a Class A felony by 5 years for aggravating circumstances; it further enhanced the sentence by another 30 years for the finding that Lay was an Habitual Offender. The trial court imposed a total sentence of 65 years; we have jurisdiction over this appeal because the longest sentence imposed was greater than 50 years.[3]

### Facts

Roger Pike and Jackie Merrick were confidential informants for the Shelby County Drug Task Force and gave the police information that drugs were being sold at Tony Wooten's house. On October 29, 1992, Officer Branson set up a controlled buy using Pike and Merrick. Pike and Merrick were searched and fitted with microphones so that the police could monitor the transaction.

When Pike and Merrick arrived at Wooten's house shortly after midnight, David Deel let them in and led them to the kitchen. Pike and Merrick saw Roger Lay in the living room. Pike saw Lay give Wooten a sheet of LSD; Pike also heard Wooten ask Lay why he had not brought 200 hits.

In the kitchen, Deel asked Pike if he could borrow ten dollars to pay for the LSD. Pike agreed and gave Deel twenty dollars. Deel went into the living room and returned almost immediately to give the twenty dollars back to Pike because Deel had found enough cash to pay for the LSD. Some moments later, Lay left.

Pike and Merrick went into the living room and bought ten hits of LSD from Wooten for fifty dollars. Pike also bought some marijuana from Deel.

Pike and Merrick left Wooten's house and gave the drugs they had bought to the police.

We shall add additional facts as necessary.

Lay raises three issues on appeal:

I. Whether it was reversible error for the trial court to admit certain evidence of uncharged conduct;

II. Whether the mention of a polygraph examination of one of the State's witnesses was an evidentiary harpoon; and

III. Whether the State presented insufficient evidence to support the jury's verdict.

### I

Lay claims that the trial court committed reversible error on each of three occasions when it admitted evidence of uncharged conduct allegedly committed by Lay.

#### A. Officer Haehl's testimony.

Officer Mike Haehl testified that on the evening of October 8, 1992, as part of the investigation of the activities at Tony Wooten's house, Merrick alone bought some LSD from Tony Wooten and then later, together with Roger Pike, returned and bought some more LSD.

There is simply no mention of Lay in Haehl's testimony concerning the history of the investigation. At one point, Haehl approached repeating something Pike said to him about Lay, but defense counsel for Lay objected on hearsay grounds, and the trial court sustained the objection. There is no error here for us to address.

#### B. Roger Pike's testimony.

■ Roger Pike testified that he knew Lay from sometime in the 1970's. He also testified that in the time that he had known Lay, from the 1970's until October of 1992, he had often bought drugs from Lay at the local Burger Chef. Lay's lawyer objected and moved for a mistrial, the trial court held a hearing outside the presence of the jury.

---

Substance); Ind.Code § 35–48–2–4(d)(13) (1993) (Schedule I, including lysergic acid diethylamide, also known as LSD).

**2.** Ind.Code § 35–50–2–8 (West Supp.1992).

**3.** Ind. Const. art. VII, § 4; Ind.Appellate Rule 4(A)(7); *Wiseman v. State* (1988), Ind., 521 N.E.2d 942, 943.

After hearing considerable argument by both defense counsel and the prosecutor about whether Pike's testimony was admissible to show a common scheme or plan, the trial court overruled Lay's motion for a mistrial. The trial court did, however, on Lay's motion, admonish the jury that it was to disregard Pike's statements about Lay's drug dealing at the Burger Chef and that it was not to consider them for any reason. Lay's lawyer argued that an admonishment was "insufficient to protect the proceedings."

What the trial court said in ruling on Lay's motion for a mistrial was the following:

I'm going to deny the motion for a mistrial. I will admonish the jury to disregard Mr. Pike's last statement. But I think, you know, this is of the nature of the type of evidence that certainly could be grounds for a mistrial. And if there is repetitive evidence or statements like this, then I will consider declaring a mistrial. I'm very, it makes me very concerned when we get into prior uncharged conduct here. And I think that again without a specific showing that it is admissible outside the presence of the jury, we should not even come close to raising those issues before the jury. We need to try Mr. Pike (sic), or Mr. Lay on the events of October 30th only and leave out all this extraneous material.

Whether to grant a mistrial lies within the discretion of the trial court. *Campbell v. State* (1993), Ind., 622 N.E.2d 495, 501 (citing *Carter v. State* (1987), Ind., 512 N.E.2d 158). This court will reverse a trial court's denial of a motion for a mistrial only if an appellant "demonstrates that he was so prejudiced that he was placed in a position of grave peril to which he should not have been subjected." *Campbell*, 622 N.E.2d at 501. When the alleged ground for a mistrial is the exposure of the jury to evidence of prior bad acts, the gravity of the peril is to be judged by the probable persuasive effect of such evidence on the jury. *James v. State* (1993), Ind., 613 N.E.2d 15, 22, *appeal after remand,* (1994) 643 N.E.2d 321.

In *Lannan v. State* (1992), Ind., 600 N.E.2d 1334, 1339, this court adopted, in its entirety, Federal Rule of Evidence 404(b). That rule provides:

**Other Crimes, Wrongs, or Acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce.

Fed.R.Evid. 404(b).[4] *See also Campbell,* 622 N.E.2d at 500 (Federal Rule of Evidence 404(b) is "an inclusive rule that allows evidence of other crimes, wrongs, or acts, for purposes such as 'proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident,' if reasonable notice is provided.").

In this case there was a motion *in limine* that the trial court had granted prohibiting the prosecution from bringing up Lay's previous *convictions.* The trial court specifically noted that Pike's comments about Lay's drug dealing at the Burger Chef was not covered by the motion *in limine* since that conduct was not the subject of prior convictions. Thus, there was no prior notice requested by the defense that the prosecution was going to attempt to use this particular kind of evidence.

At the same time, the prosecution deliberately elicited Pike's testimony about Lay's drug dealing at the Burger Chef and argued strenuously that Pike's testimony about these earlier transactions was admissible as evidence of a common scheme or plan, which it clearly was not. *See, e.g., Hardin v. State* (1993), Ind., 611 N.E.2d 123 (1993).

---

**4.** See now Indiana Evidence Rule 404(b), the text of which is nearly identical to that of its federal model except that the Indiana rule omits explicit mention of proof of opportunity as an acceptable purpose to which evidence of prior bad acts may be put.

■ Evidence of prior, uncharged bad acts can be highly and unfairly prejudicial, requiring an accused to defend both against the charged crime and the alleged uncharged misconduct. But we think Pike's testimony in front of the jury does not require reversal in this case for three reasons. First, although the prosecution was subject to a motion *in limine* regarding evidence of Lay's prior convictions, Lay did not request notice that the prosecution intended to use other evidence arguably subject to exclusion under Rule 404(b). Lay was entitled to notice, had he requested it, but he simply did not do so.

■ Second, the trial court admonished the jury to disregard Pike's testimony about his previous dealings with Lay. "A timely and accurate admonition is presumed to cure any error in the admission of evidence." *James,* 613 N.E.2d 15, 22 (citing *Green v. State* (1992), Ind., 587 N.E.2d 1314, 1317).

■ Third, a trial court is in the best position to judge the potential impact on the jury of such testimony. *See James,* 613 N.E.2d at 22. When there is sufficient independent evidence of guilt, error in the admission of evidence may be harmless. *Id.* (Citing *Jaske v. State* (1989), Ind., 539 N.E.2d 14, 22). In light of the independent evidence of Lay's guilt (see part III below), and especially in light of David Deel's testimony (see part I–C below), we think that there is no substantial likelihood that Pike's testimony about his previous dealings with Lay contributed to the jury's verdict.

For all of these reasons, we hold that the trial court did not abuse its discretion when it denied Lay's motion for a mistrial based on Pike's testimony before the jury about his previous dealings with Lay.

### C. David Deel's testimony.

■ Over Lay's objection, and after more argument about prior bad acts as evidence of a common scheme or plan, the trial court permitted David Deel to testify that between late August or early September of 1992, Lay had sold LSD to Tony Wooten and him ten times. Except for one occasion, the transactions always took place at Wooten's house. The quantities involved were 100 to 300 hits,

90% of which Wooten and Deel would resell, splitting the profits. The transactions always occurred after midnight because Lay worked the second shift at a factory.

The trial court decided that Deel's testimony was admissible to prove a common scheme or plan and relied on *Clark v. State* (1989), Ind., 536 N.E.2d 493. In *Clark,* this court reversed a drug conviction because the trial court had admitted evidence of two prior drug convictions—one seven-years old, the other thirteen-years old—as evidence of a common scheme or plan. The court said, "To call the evidence admitted in this case proof of 'common scheme or plan' is simply to say that one who committed a similar crime more than a decade ago may now be guilty of doing it again." *Id.* at 495.

In arriving at its decision, however, this court said the following:

Our cases have been consistent with the prevailing rule in this country that the "common scheme or plan" exception requires that the uncharged crime be tangibly connected to the one for which the defendant is on trial. Without some nexus, the evidence would wrongly impugn the defendant's character without being probative of a material fact.

The State offers two cases in support of its argument, *Manuel v. State* (1977), 267 Ind. 436, 370 N.E.2d 904, and *Downer v. State* (1982), Ind., 429 N.E.2d 953. In *Manuel,* the State was permitted to introduce testimony from officers who had participated in several marijuana sales with the defendant within a period of about four months commencing just before the transaction for which the defendant was being tried. This Court held that these transactions were admissible because they were part of the same scheme as the offense being tried.

In *Downer,* the man who purchased drugs from Downer in the transaction for which the latter was being tried testified he had engaged in continuous transactions with Downer for five years. This series of transactions, the Court held, was part of a common scheme.

In another case, this Court upheld use of testimony about uncharged drug transac-

tions nine months prior to the charged transactions. *Sweet v. State* (1986), Ind., 498 N.E.2d 924. In resolving the issue, Justice DeBruler wrote:

> The November transactions are not so remote in time or circumstance as to be irrelevant. The February transaction precedes the charged transactions by nine months. Although more remote in time, the circumstances of the transaction tend to prove a common scheme and plan of conducting a drug dealing business for profit.

*Id.* at 928. The earlier sales and those for which the defendant was being tried were connected in another way: the same informant was involved in both.

*Id.* at 494–95 (some citations omitted).

In *Hardin v. State* (1993), Ind., 611 N.E.2d 123, this court reversed a drug conviction and said of the evidence admitted of prior uncharged conduct:

> In the present case, the evidence does not conform to either branch of the common scheme or plan exception. The evidence was not properly admissible under the modus operandi branch or common scheme or plan. The State has not shown that Hardin committed the past uncharged misconduct and the present, charged crime using methods so similar as to comprise Hardin's signature. The record does not reflect any precise methods Hardin may have used in the uncharged activities. Nothing appears to be strikingly similar between the charged crime and the uncharged misconduct. Indeed, the record reflects no more than the allegations that Hardin acted badly on previous occasions. At best, the charged and uncharged transactions appear to be mere repetition of crimes.
>
> We likewise find that the evidence does not conform to the res gestae branch of the common scheme or plan exception. Although the character of the crimes was similar in that it involved drug transactions, the time and the place of the separate crimes were not sufficiently related to

establish some plan that embraced both crimes. The present, charged crime and the drug dealing activities, alleged in Trooper Wilkerson's and Diahann Watson's testimony, were not a part of the same, uninterrupted transaction. Over one month in time separated the two acts. Also, the charged crime occurred at a location that was distinct, separate, and somewhat distant from the uncharged, alleged transaction. In fact, in the uncharged action, no drug transaction occurred. Further, a third party, not Hardin, was the drug seller in the uncharged action.

*Id.* at 130.

Applying *Clark*, together with the cases it relies upon, and *Hardin* to the facts of this case, the admission of Deel's testimony about his previous dealings with Lay fall reasonably within the common scheme or plan "exception."[5] The State charged Lay with delivering LSD to Tony Wooten who, together with Deel, had an ongoing business relationship with Lay to deal in drugs. The charged transaction was part of that relationship in which Lay would sell LSD to Wooten and Deel, who would then resell the LSD to others.

Additionally, the charged transaction took place at Wooten's house, which is where all of the uncharged transactions, save one, also took place. The charged transaction also took place after midnight as had the uncharged transactions. And the charged transaction also involved precisely the same people as the uncharged transactions.

Although it permitted Deel to testify about the uncharged conduct, the trial court gave the jury a limiting instruction that the uncharged conduct had been offered to show a common scheme or plan that included the charged activity.

We hold that the trial court properly permitted Deel to testify about his previous dealings with Lay and gave the jury an appropriate limiting instruction. *See also United States v. Zapata,* 871 F.2d 616 (7th

---

5. Because Rule 404(b) only excludes evidence of prior bad acts when offered to show bad character or conformity therewith, it is, perhaps, mistaken to refer to a common scheme or plan "exception." As Justice DeBruler noted in *Campbell,* the rule is generally inclusive. 622 N.E.2d at 500.

Cir.1989); *United States v. Zolicoffer*, 869 F.2d 771 (3rd Cir.1989), *cert. denied*, 490 U.S. 1113, 109 S.Ct. 3172, 104 L.Ed.2d 1034; *United States v. Witt*, 618 F.2d 283 (5th Cir.1980), *cert. denied*, 449 U.S. 882, 101 S.Ct. 234, 66 L.Ed.2d 107.

## II

■ We have said that "[we] regard an evidentiary harpoon as a prosecutorial act of deliberately exposing the jury to evidence, known to be inadmissible, by means of some artifice." *Baker v. State* (1982), Ind., 435 N.E.2d 990, 992. It is called a "harpoon" because the inadmissible evidence is " 'willfully jabbed into the defendant and then jerked out by an admonition to the jury not to consider the same.'" *White v. State* (1971), 257 Ind. 64, 71, 272 N.E.2d 312, 316 (quoting *Gregory v. United States*, 369 F.2d 185, 189–90 (D.C.Cir.1966), *appeal after remand*, 410 F.2d 1016 (1969), *cert denied*, 396 U.S. 865, 90 S.Ct. 143, 24 L.Ed.2d 119 (1969)).

At trial, Lay's lawyer cross-examined Pike extensively about a plea agreement into which Pike had entered with the State concerning a charge of Dealing in LSD as a Class B felony. On redirect examination, the prosecutor questioned Pike about the agreement:

Q: Okay, Now let's go on to that settlement just a minute. And let me show you paragraph 4 and ask you if this is in fact part of the plea agreement? In fact, this is a copy of the entire plea agreement you've entered into, right?

A: Yes, it is.

MR. BARRETT: Now, Judge, we're going to object. His testimony was he didn't read it. His lawyer did.

A: I didn't read it.

JUDGE: Overruled.

Q: Would you read to the jury paragraph 4 of that plea agreement?

A: "The plaintiff makes the recommendation herein for the reason that the plaintiff has a strong and convincing case, and believes that its evidence would lead to a successful prosecution of this mat-

ter, but further believes that such recommendation . . ."

Q: Recommendation.

A: Yeh (affirmative), ". . . recommendation is in the best interest of all interested persons. Additionally, the defendant has assisted the plaintiff in the investigation of criminal matters, has agreed to testify truthfully in regard to all matters about which inquiry could be made by the plaintiff, and has agreed to take a polygraph examination or examinations upon request by the plaintiff."

Q: So as part of your recommendation you agreed to testify truthfully, didn't you?

A: Yes, I did.

Q: Further, you agreed to take a polygraph examination upon my request or anybody's request for the State, right?

A: Yes, sir.

Q: You know what a polygraph is, don't you?

A: Yes, I do.

MR. BARRETT: To which we'll object at this point, Judge. Polygraph evidence is not admissible.

MR. YEAGER: That's not the question, Your Honor.

MR. BARRETT: Then it's irrelevant.

JUDGE: I'll sustain the objection.

Lay argues that the prosecutor deliberately elicited Pike's testimony about the polygraph test, that such evidence is inadmissible, and that the mention of the polygraph requires reversal of his conviction. Lay relies primarily on *Brown v. State* (1992), Ind., 587 N.E.2d 111. We repeat here at length what this court said in *Brown*:

The crimes allegedly were committed by appellant and one David Ohm. Prior to trial, Ohm entered into a plea agreement with the State in which he was to be sentenced on two counts of murder and receive concurrent sentences. However, the reception of this agreement was conditioned upon Ohm taking a polygraph test. During Ohm's testimony at appellant's trial, the State attempted to introduce in evidence the plea agreement which includ-

ed the condition that Ohm take a polygraph test.

Appellant objected and the court sustained the objection. Later, when defense counsel cross-examined Ohm, they questioned him in detail concerning his plea agreement and the time he was to receive. However, no mention was made of the polygraph examination. When the State resumed direct examination, they again offered the entire plea agreement including the polygraph reference and eventually, after argument by the State that appellant had opened the door concerning the plea agreement, the court allowed the entire plea agreement to be introduced in evidence and permitted the State to question Ohm concerning the taking of a polygraph examination. However, no result of the examination was disclosed.

This Court often has repeated that evidence of a polygraph examination is not admissible in evidence unless both sides to the litigation agree in advance of the giving of such examination that it may be used in evidence by either party. *Smith v. State* (1989), Ind., 547 N.E.2d 817. We also have held that to admit facts that indicate a witness has taken a polygraph test is error. *Conn v. State* (1989), Ind., 535 N.E.2d 1176. To inject such evidence into a trial is reversible error. *Perry v. State* (1989), Ind., 541 N.E.2d 913.

It also is true that when the State has entered into a plea agreement with a witness it is necessary for the State to disclose such agreement. *Garland v. State* (1983), Ind., 444 N.E.2d 1180. There is no question that the plea agreement entered into between Ohm and the State was admissible in evidence. However, the statement in that agreement that he was to take a polygraph test was irrelevant to the statements he made concerning the crime and the sentence he was to receive therefor. When an exhibit is otherwise admissible but contains inadmissible evidence or inferences, the improper portions of that exhibit should be redacted. *See Stone v. State* (1978), 268 Ind. 672, 377 N.E.2d 1372. The improper admission of this evidence and the manner in which it was

handled by the State constitute reversible error.

The State argues that the admission was harmless error because the State did not pursue the result of the polygraph examination. There can be no doubt that when submitted to the jury under the circumstances the only logical conclusion they could deduce would be that Ohm passed the polygraph test thus enabling him to complete his plea bargain with the State. *Id.* at 112–13.

It is clear that this case is factually distinguishable from *Brown* in two critical respects. First, *Brown* said that it was error to admit facts that show a witness *has taken* a polygraph test. The prosecutor introduced no such fact in this case. He only elicited from Pike that Pike *had agreed* to take a polygraph test and that Pike knew what a polygraph test was. Lay's objection, which was sustained by the trial court, cut short the prosecutor's questioning on the subject, and the record, consequently, does not reflect whether Pike in fact took a polygraph test.

Second, the plea agreement at issue in *Brown* was explicitly conditioned upon the successful completion of a polygraph examination. In this case, Pike was merely on notice that the State might demand he submit to a polygraph test. Admission before the jury, therefore, of paragraph 4 of Pike's plea agreement did not imply in any way that Pike had passed a polygraph test. *Brown*, then, does not quite cover the case.

In *Kremer v. State* (1987), Ind., 514 N.E.2d 1068, 1072–73, we held inadmissible a defendant's offer to take a polygraph to show his belief in the truth of a statement he gave to the police. *See also Minneman v. State* (1982), Ind., 441 N.E.2d 673, 678 (trial court properly granted State's motion *in limine* to prohibit defendant and defendant's witnesses from mentioning willingness of defendant to take a polygraph test), *cert. denied,* 461 U.S. 933, 103 S.Ct. 2099, 77 L.Ed.2d 307 (1983); *Helton v. State* (1980), 273 Ind. 211, 212–13, 402 N.E.2d 1263, 1265 (trial court properly excluded evidence that State refused defendant's request to be administered a polygraph test). *Cf. Carter v. State* (1987), Ind., 512 N.E.2d 158, 165 ("*Reference* to a poly-

graph in most cases should not be permitted." (Emphasis added)). Similarly here, though free to examine Pike about the other conditions of his plea agreement, the prosecutor should have made *no* mention of the provision requiring Pike to take a polygraph test at the State's request. That questioning was colorable cause for a mistrial.

Lay, however, did not move for a mistrial or ask that the jury be admonished. Indeed, he did not even object at the first mention by Pike of the polygraph test, but only when it appeared that the prosecutor might be maneuvering Pike to say that he had taken a polygraph test. And once the trial court sustained his objection, Lay seemed satisfied that the prosecutor had been restrained from pursuing further that particular line of questioning.

▇ Normally, to preserve the error for appeal, a defendant must object or move for a mistrial at the first mention of a polygraph examination. *Davis v. State* (1992), Ind., 598 N.E.2d 1041, 1048, *reh'g denied, cert. denied,* ── U.S. ──, 114 S.Ct. 392, 126 L.Ed.2d 340 (1993); *Houchen v. State* (1994), Ind.App., 632 N.E.2d 791, 793. On the facts of this case, we must understand Lay to claim that the reference to a polygraph test amounted to fundamental error that deprived Lay of his right to a fair trial. *Davis,* 598 N.E.2d at 1048; *Houchen,* 632 N.E.2d at 793.

There are, certainly, situations in which mention of a polygraph examination, offered or administered, may amount to fundamental error. *Houchen,* 632 N.E.2d at 793–94. But in *Houchen,* a veteran police officer twice testified that he had offered the *defendant* a polygraph test and that the defendant had refused. The Court of Appeals found reference to a polygraph examination to be fundamental error because the defendant's credibility was crucial to his defense and because "[u]pon hearing Toney testify he offered Houchen a polygraph, the jury had to assume one of two things: either Houchen took the test and failed it or he refused to take the test because he was being untruthful." *Houchen,* 632 N.E.2d at 794.

First, as we said above in our discussion of *Brown* in relation to this case, Pike's testimony in no way implied that he had passed a polygraph test. Second, Pike's testimony, although it played an important part in the State's case against Lay, was largely echoed by the testimony of his fellow informant, Jackie Merrick. Also, neither Pike's nor Merrick's testimony was nearly as damaging as that of David Deel, who had used Lay as a supplier of LSD over a period of months. Therefore, both because Pike's testimony did not imply even that he had taken a polygraph test, *see Carter,* 512 N.E.2d at 158 (mention of polygraph test "generated at most minimal prejudice because results of the polygraph were not revealed."), and because the mention of a polygraph test here could not be said to have guaranteed a conviction, *see Houchen,* 632 N.E.2d at 794, we cannot say that Pike's testimony before the jury amounted to fundamental error requiring reversal of Lay's conviction.

### III

▇ Lay argues that the evidence presented by the State was insufficient to support the verdict. When reviewing a challenge to the sufficiency of the evidence, this court considers only the evidence supporting the verdict together with the reasonable inferences to be drawn from that evidence. *Wear v. State* (1992), Ind., 593 N.E.2d 1179. We will neither reweigh evidence nor attempt to judge the credibility of witnesses. If there is substantial evidence of probative value from which a rational trier of fact could have found the defendant guilty beyond a reasonable doubt, we will affirm. *Garrett v. State* (1993), Ind., 602 N.E.2d 139, 142, *reh'g denied.*

The State charged Lay with Dealing in LSD as a Class A felony because the transaction occurred within 1000 feet of a school. Ind.Code §§ 35–48–4–2(a) & 35–48–4–2(b)(2). Indiana Code § 35–48–4–2 provides in part:

(a) A person who:

　(1) knowingly or intentionally:

　. . . .

　(C) delivers . . .

　. . . .

　a controlled substance, pure or adulterated, classified in schedule I, II, or

III, except marijuana, hash oil, or hashish;

commits dealing in a schedule I, II, or III controlled substance, a Class B felony, except as provided in subsection (b).

LSD is a schedule I controlled substance. Ind.Code § 35–48–2–4(d)(13). Indiana Code § 35–48–1–11 (1993) defines "delivery" and provides in part:

"Delivery" means:

(1) an actual or constructive transfer from one (1) person to another of a controlled substance.

The amended information charged that "[o]n or about October 30, 1992, Roger A. Lay did knowingly or intentionally deliver to Tony Wooten a controlled substance in Schedule I ... to-wit: "lysergic acid diethylamide," commonly known as "LSD", within one thousand feet (1000′) of school property...."

Roger Pike and David Deel both testified that earlier in the evening of October 29 and 30, 1992, Pike and Jackie Merrick went to Tony Wooten's house. Pike testified that during this first visit he asked Deel and Wooten if they had any acid. Deel testified that Merrick and Pike stayed briefly and that they bought some marijuana before leaving. Pike testified that he told Deel and Wooten that they would be back about midnight or a little later.

Pike and Deel also both testified that Merrick and Pike in fact returned later that evening, that when he arrived, Roger Lay handed Tony Wooten a sheet of LSD, and that Lay and Wooten were arguing about why Lay had not brought 200 hits. According to Pike, Lay told Wooten that he would make it up, but that Wooten would have to take the hundred he had or leave it.

David Deel testified that he witnessed Lay give Wooten 100 hits of acid in exchange for $200. Deel also testified that he was present when Wooten gave Pike and Merrick their 10 hits and that the LSD Wooten gave Pike and Merrick was the same LSD that Lay had sold to Wooten earlier.

Pike also testified that he and Merrick bought 10 hits of acid from Tony Wooten, which Wooten tore off a sheet containing 100 hits. In addition, the police officer monitoring the wire being worn by Merrick heard two people successively count to 10—first a man, then a woman.

Lastly, the State also introduced evidence that the 10 hits delivered to Pike and Merrick were, in fact, LSD, and unrefuted evidence that Lay delivered the LSD to Wooten within one thousand feet of a school.

There was, then, evidence presented by the State on each essential element of the crime as charged. Lay argues that the verdict in this case overlooks many inconsistencies in the State's case and that "the witnesses gave incredible testimony" that cannot be relied upon to support Lay's conviction.

First, Lay does not specifically point out any of the inconsistencies in the State's case that he alleges. Second, because the State only tested the LSD Wooten sold Pike and Merrick, Deel's testimony that the LSD Wooten sold Pike and Merrick was the same LSD that Lay sold Wooten was critical to the State's proof that it was, in fact, LSD that Lay sold Wooten. The jury was certainly free to believe Deel or not; apparently it chose to believe him. In addition, the jury could have inferred that Lay delivered to Wooten the LSD that Wooten delivered to Pike and Merrick because Pike and Merrick asked for LSD earlier in the evening and had to return later to obtain it—after Lay had arrived.

We think that the State fairly proved its case with respect to each element of the crime charged and that to reverse, we would have to substitute our judgment of the credibility of the State's witnesses for that of the jury's. This we will not do.

*Conclusion*

Accordingly, Lay's conviction for Dealing in LSD within one thousand feet of a school and the finding that Lay is an Habitual Offender are affirmed.

SELBY, J., concurs in result without separate opinion.

DeBRULER, J., concurs in result with separate opinion.

SHEPARD, C.J., dissents with separate opinion in which DICKSON, J., concurs.

DeBRULER, Justice, concurring in result.

According to the prosecution witness Deel, Deel and Wooten first met appellant Lay in a bar at the end of August or the beginning of September 1992. Upon being asked, Lay said he could supply LSD. The subject was discussed by the three later the same night at Wooten's house. A week later appellant Lay went to Wooten's house and quoted his price for LSD. The week after that, Lay actually sold LSD for the first time to Deel and Wooten, again at Wooten's house. At that time of the first actual sale, Lay gave Deel and Wooten his grandmother's telephone number and told them to call him there when they needed an additional supply. During the next six weeks, leading to the charged crime, this number was actually used in arranging some of the transactions. All but one of the subsequent transactions occurred in Wooten's house. In my opinion, the testimony of Deel, that he and Wooten were sold LSD ten times between the end of August 1992, and the charged sale on October 30, 1992, was specially relevant and admissible under Ind.Evidence Rule 404(b) as probative of a discrete and special criminal plan to supply drugs to Deel and Wooten at their residence for resale, of which the October 30, 1992 charged event was a single manifestation. I do, however, agree with the dissent of Chief Justice Shepard that the admissibility of the Deel testimony cannot be sustained by resort to the now-abandoned "common scheme or plan" rationale.

In addition, the fact that Lay was present in the Deel/Wooten house at the time of the charged delivery was not really in dispute at trial. The best inferences for the defense from some of the prosecution's evidence is that Lay was merely an innocent bystander, standing around or simply handing Wooten the sheet of LSD, part of which was sold to the informants. I therefore also conclude that the prosecution was properly permitted to refute or dispel this inference favorable to the defense by presenting the plan and its other manifestations. Under this reasoning, the plan, with its other manifestations, was also admissible under Evid.R. 404(b) as probative of intent and knowledge.

Upon the foregoing basis, I respectfully concur in result.

SHEPARD, Chief Justice, dissenting.

██ Today's decision represents one of those rare moments when the lead opinion announces the result but the concurrence and the dissent announce the applicable rule of law. A majority affirms the conviction and a different majority declares that "common scheme or plan" has not survived adoption of the Indiana Rules of Evidence.

David Deel testified that he bought drugs from appellant on various occasions in late August and early September 1992. As Justice Sullivan correctly points out, this Court sometimes permitted evidence of this kind under the "common scheme or plan" rule of our common law of evidence.

Our adoption of Federal Rule of Evidence 404(b) in *Lannan v. State* (1992), Ind., 600 N.E.2d 1334, and our subsequent promulgation of Indiana Rule of Evidence 404(b), do not represent a mere continuation of that common law caselaw. Instead of the old "common scheme or plan" rule, our law now admits evidence of "plan" alone. It is a narrower exception than our old rule, which tended to degenerate into an all-purpose excuse for admitting pretty much any old prior misconduct.

The evidence at issue here seems largely designed to show that Lay was in the habit of dealing drugs to buttress the other proof that he did so on October 29, 1992. I would hold it inadmissible.

Beyond the prosecution's use of new and ancient evidence about Lay's prior peddling of drugs (some of it nearly two decades old), the State took the opportunity presented to suggest to the jury that its witness Mr. Pike had taken his polygraph test and passed it. As the cases cited by the majority demonstrate, this Court has historically taken a dim view of such purposeful use of polygraph evidence. I see its use here as part of a

series of improper plays that collectively denied Lay a fair trial.

DICKSON, J., concurs.