Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 22 2014, 9:56 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DARREN BEDWELL**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MATTHEW LUCAS MAJOR, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 53A01-1404-CR-158 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MONROE CIRCUIT COURT
The Honorable Marc R. Kellams, Judge
Cause No. 53C02-1308-FA-779

**December 22, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Matthew Lucas Major ("Major") was convicted in Monroe Circuit Court of six counts of Class A felony child molesting and was sentenced to an aggregate term of ninety years incarceration. Major appeals and presents two issues, which we restate as: (1) whether the trial court abused its discretion in denying Major's motion for a mistrial, and (2) whether the trial court properly sentenced Major.

We affirm.

**Facts and Procedural History**

Prior to their marriage Major and his then-girlfriend Sarah Moore ("Sarah") had a daughter, S.M., born in 2004. The couple married in 2005, when Sarah was only sixteen. The couple had another child, a son, H.M., born in 2011. Sarah filed for divorce in 2012, and the divorce was finalized in early 2013. Major and his ex-wife shared custody of the children. Following the divorce, Major lived with his girlfriend, Rebecca Gillespie ("Rebecca"), in Bloomington, along with Rebecca's two young children, aged nine and three.

After the divorce, Sarah noticed that S.M.'s behavior began to change; her grades at school declined, and the nine-year-old child began to wet the bed several times per week. S.M. apparently got along well with her father and his new girlfriend but disliked it when her father drank too much, which occurred more often following the divorce.

In the summer of 2013, Sarah noticed blood in S.M.'s underwear and assumed the girl had started menstruating. Later that summer, she noticed that S.M. was starting to grow pubic hair. She therefore told S.M. that she was going through puberty and that

having a period meant that it was possible for her to become pregnant. S.M. then turned pale and informed her mother that Major had been touching her inappropriately.

S.M. stated that Major had taken her on a walk at a park and told her to take off her shorts. Major then told her to bend over, and he placed his penis in S.M.'s "bottom." Tr. p. 82. Major moved his body back and forth while saying, "f**k." Id. When they returned to the car, he told S.M. to get in the driver's seat, which he then reclined so that she could lie down. Major then placed his penis in S.M.'s vagina and began to move back and forth. H.M., who had been sleeping in a car seat, woke up and began to cry. Major told the young child to shut up. S.M. began to cry and asked Major to stop. Instead, he struck her and told her to be quiet or he would "do it harder." Tr. pp. 100-101. When he was finished, Major told S.M. that what he had done was a "daddy-daughter secret" that she should not tell to anyone. Tr. p. 83.

On another occasion, Major told S.M. to take off her shorts and underwear when she was in bed. He then waited until she was asleep, crawled on top of her and placed his penis in S.M.'s "bottom part," which she identified as not her vagina. Tr. p . 84. When Major had finished, S.M. went to the bathroom and noticed that she was bleeding. On yet another occasion, Major placed two of his fingers in S.M.'s vagina. When S.M. told Major that this hurt, he told her to be quiet. S.M. also testified that when she was in the car with her father, Major would take photographs of her genitals or "play[] around" with her genital area. During another incident, Major told S.M. to go to Rebecca's room when Rebecca was not at home. Major exposed his penis, and told his daughter to manipulate him. He also made S.M. perform oral sex on him until he ejaculated.

3

During another incident in the car, Major unzipped his pants, removed his penis and told S.M. to fondle him. He also pushed her head down and forced her to perform oral sex on him. He threatened to "knock [S.M.]'s teeth down [her] throat" if she used her teeth on his penis. Tr. p. 95. In all, S.M. testified that Major had put his penis in her vagina on "three or four" occasions, and identified four locations where such behavior had occurred. Id. at 117.

After telling her mother about Major's actions, Sarah took S.M. to the hospital, where she was examined by Dr. Roberta Hibbard ("Dr. Hibbard"). Dr. Hibbard noticed redness in S.M.'s genital area and a small adhesion in her labia. The police also took a mattress from Rebecca's apartment. Five cuttings from the mattress tested positive for seminal fluid; two of these cuttings had sperm cells with DNA that matched Major; one cutting had DNA matching Rebecca; and two others had a mixture of DNA from at least three people, from which Major, Rebecca, and S.M. could not be excluded.

On August 9, 2013, the State charged Major with six counts of Class A felony child molesting, Class C felony vicarious sexual gratification, Class D felony intimidation, and Class A misdemeanor possession of marijuana. A jury trial was held from February 18 to February 21, 2014. At the trial, the State called Rebecca as a witness and had her identify three photos of female genitalia as her own. Rebecca claimed that Major had taken the photos with his phone when they were in the car. Major objected to the admission of these photos on grounds of relevance, but the trial court overruled his objection when the State indicated that the relevance of the photos would become clear based upon further testimony. The State then called Dr. Hibbard to testify

4

regarding the photos. Dr. Hibbard, however, was unable to state with any certainty whether the photos were of Rebecca's genitals or S.M.'s. After a sidebar discussion, the trial court then struck the three photos from evidence and instructed the jury to disregard them. Major moved for a mistrial, which the trial court denied.

At the conclusion of trial, the jury found Major guilty of six counts of Class A felony child molesting but acquitted on the other counts. The trial court found as aggravating that Major had a prior criminal history and that Major, as S.M.'s father, had abused a position of trust over a period of time. The trial court then sentenced Major to concurrent terms of thirty years each on each count. The trial court ordered Counts I – III to be served concurrently and Counts V and VI to be served concurrently. However, the trial court ordered Counts I – III, Count IV, and Counts V – VI to be served consecutively, for an aggregate term of ninety years. Major now appeals.

**I. Mistrial**

Major first claims that the trial court erred in denying his motion for a mistrial. As noted above, the trial court initially admitted into evidence photos of female genitalia identified by Rebecca as her own. The State's theory was that these photos actually depicted S.M.'s genitalia. When Dr. Hibbard was unable to testify as to whether the photos depicted the genitals of a girl S.M.'s age or those of a woman Rebecca's age, the trial court reversed its earlier ruling, withdrew the photos from evidence, and instructed the jury to "disregard those exhibits" and that they were "not to consider those exhibits . . . for purposes of your deliberation." Tr. p. 287. Major then moved for a mistrial, which the trial court denied.

5

A trial court's discretion in determining whether to grant a mistrial is afforded great deference on appeal, because the trial court is in the best position to gauge the surrounding circumstances of an event and its impact on the jury. Mickens v. State, 742 N.E.2d 927, 929 (Ind. 2001). A court on appeal therefore reviews the trial court's decision solely for abuse of discretion. Id. "After all, a mistrial is an extreme remedy that is only justified when other remedial measures are insufficient to rectify the situation." Id. To prevail on appeal from the denial of a motion for mistrial, the defendant must establish that the questioned conduct was so prejudicial and inflammatory that he was placed in a position of grave peril to which he should not have been subjected. Id. The gravity of the peril is determined by considering the alleged misconduct's probable persuasive effect on the jury's decision, not the impropriety of the conduct. Id.

Here, we cannot say that the trial court's decision to deny Major's motion for a mistrial was clearly against the logic and effect of the facts and circumstances before the court.[1] When the trial court realized that Dr. Hibbard could not identify the photos as depicting S.M.'s genitalia, the court properly withdrew the photos from evidence and admonished the jury not to consider the photos during their deliberations. "A timely and accurate admonishment is presumed to cure any error in the admission of evidence." Owens v. State, 937 N.E.2d 880, 895 (Ind. Ct. App. 2010) (citing Lay v. State, 659 N.E.2d 1005, 1009 (Ind. 1995)). Therefore, reversible error is seldom found when the

---

[1] This is not to say that we condone the behavior of the prosecution. Indeed, it is hard to believe that the State had not previously discussed with Dr. Hibbard whether the photos at issue could be identified as depicting the genitals of Rebecca or S.M. On the witness stand, in front of the jury, was not the time to first ask this seemingly crucial question.

trial court has admonished the jury to disregard improper evidence. See id. (citing Warren v. State, 757 N.E.2d 995, 999 (Ind. 2001) ("[R]eversible error is seldom found when the trial court has admonished the jury to disregard a statement made during the proceedings.").[2] Given this very difficult standard, we cannot say that the presentation to the jury of photos of female genitalia, which were never positively identified as belonging to S.M., placed Major in a position of grave peril to which he should not have been subjected. Accordingly, the trial court did not abuse its discretion in denying Major's motion for a mistrial.

## II. Sentencing

Major also claims that the trial court abused its discretion when it ordered some of his sentences to be served consecutively. The decision to impose consecutive or concurrent sentences lies within the trial court's sound discretion, and, on appeal, we review the trial court's decision only for an abuse of that discretion. Gellenbeck v. State, 918 N.E.2d 706, 712 (Ind. Ct. App. 2009). The trial court must find at least one aggravating circumstance before imposing consecutive sentences. Owens v. State, 916 N.E.2d 913, 917 (Ind. Ct. App. 2009). However, the trial court is not required to identify the aggravators that support consecutive sentences separately from the factors that support the length of the sentence. Smith v. State, 770 N.E.2d 818, 821 (Ind. 2002). Thus, although a trial court is required to state its reasons for imposing consecutive sentences, it may rely on the same reasons to impose a maximum sentence and also impose consecutive sentences. Gellenbeck, 918 N.E.2d at 712 (citing Smith, 770 N.E.2d

---

[2] The court in Warren was itself quoting Bradley v. State, 649 N.E.2d 100, 108 (Ind. 1995)).

at 821). Moreover, the presence of a single aggravating circumstance may be sufficient to support the imposition of consecutive sentences. Id. at 712-13. In fact, the same factor may be used both to enhance a sentence and to justify consecutive sentences. Gleason v. State, 965 N.E.2d 702, 712 (Ind. Ct. App. 2012).

Major claims that the trial court failed to identify any aggravating circumstances that would justify the imposition of consecutive sentences. We disagree. At the sentencing hearing, the State argued in favor of the imposition of three consecutive thirty-five year sentences. Major argued in favor of a thirty-five year sentence on all counts, with all of the sentences to run concurrently, and five years suspended to probation. In pronouncing its sentence, the trial court stated in relevant part:

> It is true that the defendant's criminal history is minimal based upon the one deferral and he is twenty-eight years old. I'm actually having a hard time finding any aggravating or mitigating circumstances of any substance. I mean, I think – well, first of all, if we turn to the recommendations of Probation, he has a history of criminal behavior but it is admittedly minimal. I mean, the crime in and of itself [assault with a deadly weapon] would seem shocking but the way it was handled and the way it was deferred, it would have to indicate to me that either his involvement was minimal or that his acts weren't what one might believe the crime as defined alleged, that it reached that level because it was deferred and dismissed apparently. The victim was under twelve, but that's an element of the crime. I mean, it does say in each of the crimes that she was nine years old and the fact that [victim] was in the care, custody, or control of [the defendant], is true. *It was a violation of trust for a natural father to have committed the acts that are alleged and for which he's been convicted.* Inherent in all child molesting, almost without exception, is a person of trust being in a position to take advantage of a child. I know there was a discussion during the trial and arguments made that there was insufficient evidence for at least two of the first three counts and although I no doubt expect that to be an argument on appeal, I do believe, although minimal, that there is sufficient evidence on those three counts, and then the other three, that there was various discussions about what happened, but there was testimony about it, and so there is some method to the State's request for sentencing. I can understand

8

the defendant's request, that the defendant not spend a life sentence for these, but they are all A felonies *and there were multiple acts over a period of time* and that's just the way it stacks up unfortunately with a credit restricted nature of the felonies, the fact that they're all A felonies. It does make sense that it's extensive, if not lifelong. For what it's worth, I believe the little girl. I hope she's not lying about it. I did watch her very carefully and from the perspective of sentencing I did believe the allegations that she made were true, and so *that puts me in the position then of considering multiple, really despicable acts by a natural father.* There is no justification for child molesting of anybody by anyone, but it does seem at least, if not legally more aggravating, *it does seem more offensive, if you will, that the acts were conducted by a natural father who's goal in life should be the protection and care of his children.* So with that in mind and with my findings that we're on balance in an advisory sentence, I'm going to enter a thirty year sentence for Counts I, II, and III, concurrent to each other. Count IV is a thirty year sentence, consecutive to Counts I, II, and III. Count V is a thirty year sentence consecutive to Counts IV, and VI is a thirty year sentence concurrent to Count V.

Tr. pp. 566-69 (emphases added).

The trial court's statements at the sentencing hearing make it clear that the court considered as aggravating that Major committed multiple, despicable acts on his own daughter over a long period of time, violating the most sacred trust—that between a parent and child. We are therefore satisfied on appellate review that the trial court did not abuse its discretion in ordering Major's advisory sentences of thirty years to be served in groups of three consecutive terms, for an aggregate sentence of ninety years. See Plummer v. State, 851 N.E.2d 387, 390 (Ind. Ct. App. 2006) (holding that trial court did not abuse its discretion in sentencing defendant to consecutive sentences based upon the aggravating factor of abuse of trust where defendant molested his two daughters); see also Ludack v. State, 967 N.E.2d 41, 49 (Ind. Ct. App. 2012) (noting that multiple acts of molestation directed toward the same victim "'should not be free of consequences.'"

9

(quoting Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008)).  Cf. Ortiz v. State, 766 N.E.2d 370, 377 (Ind. 2002) (concluding that trial court's curt, two-sentence statement that "[I]t's because of the fact that those sets of circumstances were totally different at the time that those offenses occurred.  And to that extent, it adds insult to the injury," fell short of requirement that the sentencing statement identify, explain, and evaluate aggravating circumstances used to impose consecutive sentences).

**Conclusion**

The trial court did not abuse its discretion in denying Major's motion for a mistrial. Nor did the trial court abuse its discretion in ordering three groups of Major's thirty-year sentences to be served consecutively.

Affirmed.

NAJAM, J., and BRADFORD, J. concur.