# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**JOHN T. WILSON**
Anderson, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| WILLIAM REMY,        ) | |
|      ) | |
| Appellant-Defendant,      ) | |
|      ) | |
| vs.      ) | No. 48A02-1310-CR-857 |
|      ) | |
| STATE OF INDIANA,      ) | |
|      ) | |
| Appellee-Plaintiff.      ) | |

APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable Thomas Newman Jr., Judge
Cause No. 48C03-1110-FA-1844

**September 30, 2014**

**OPINION - FOR PUBLICATION**

**ROBB, Judge**

## Case Summary and Issues

Following a jury trial, William Remy was convicted of three counts of child molesting, all Class A felonies; one count of child molesting as a Class C felony; and performing sexual conduct in the presence of a minor, a Class D felony. He received an aggregate sentence of ninety-five and one-half years imprisonment. Remy appeals his convictions and sentence, raising the following issues for our review: (1) whether the trial court abused its discretion by allowing certain pornographic materials to be admitted at Remy's trial; and (2) whether Remy's sentence is inappropriate in light of the nature of his offenses and his character. Concluding the admission of pornographic images at Remy's trial was erroneous but amounts to harmless error and that Remy's sentence is not inappropriate, we affirm.

## Facts and Procedural History

In 2009, H.B., who was eleven years old, moved to Madison County to live with his mother and her boyfriend, Remy. In July of 2009, Remy began asking H.B. to shower with him. While in the shower, Remy would ejaculate on H.B.'s back. On some of those occasions, Remy inserted a butt plug into H.B.'s anus. On one occasion, Remy wrapped H.B.'s naked body in saran wrap, cutting holes for his eyes, mouth, nose, and penis, and Remy then performed oral sex on H.B. H.B. recalled another occasion when Remy forced H.B. to wear nothing but a dog collar and made him get on all fours and act like a dog.

Remy, H.B., and H.B.'s mother subsequently moved to another residence in Madison County. It was there that Remy first had anal sex with H.B. Once this began,

incidents of molestation occurred on a weekly basis. Remy would instruct H.B. to clean out his anus with a black hose connected to the shower prior to Remy having anal sex with him. Remy often used dildos and vibrators on H.B., and Remy had H.B. use them on him as well. Sometime in the two years during which Remy repeatedly molested H.B., Remy showed H.B. numerous pornographic images and videos that Remy had on his computer.

Remy's molestations of H.B. stopped in July 2011 when Remy's relationship with H.B.'s mother ended. H.B. and his mother moved to West Virginia in November 2011. After H.B. was no longer living with Remy, H.B. informed his biological father about what had occurred between himself and Remy, and H.B.'s father contacted the police. H.B. underwent a sexual assault examination performed by a nurse with the Madison County Sexual Assault Treatment Center, and the examination revealed signs that H.B. had experienced anal penetration. Police conducted a search of Remy's residence and found a butt plug, dog collar, anal lube, plastic wrap, numerous sex toys (including vibrators and dildos), a black tube connected to the shower line, and pornography stored in Remy's computer.

On October 10, 2011, the State charged Remy with Count 1, child molesting, a Class A felony (oral sex); Count 2, child molesting, a Class A felony (anal penetration); Count 3, child molesting, a Class A felony (anal penetration); Count 4, child molesting, a Class C felony; and Count 5, performing sexual conduct in the presence of a minor, a Class D felony. A jury trial was held over the course of several days in August 2013, at the end of which the jury found Remy guilty of all five counts. The trial court imposed

the advisory sentence for each count but ordered that the sentences would run consecutively, resulting in an aggregate sentence of ninety-five and one-half years. This appeal followed.

Discussion and Decision

I. Evidence of Pornography

Remy contends that admission of evidence of pornographic materials found inside his home was improper character evidence prohibited by Indiana Evidence Rule 404(b). A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. Young v. State, 980 N.E.2d 412, 417 (Ind. Ct. App. 2012). A trial court abuses its discretion when its decision is clearly against the logic and effect of the facts and circumstances or when the trial court has misinterpreted the law. Id.

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Ind. Evidence Rule 404(b) (2013). However, such evidence may be admitted to prove "motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." Id. The rule is "designed to prevent the jury from assessing a defendant's present guilt on the basis of his past propensities, the so called 'forbidden inference.'" Hicks v. State, 690 N.E.2d 215, 218-19 (Ind. 1997). A court faced with a challenge to evidence under Rule 404(b) must: (1) decide if the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act; and (2) balance the probative value of the evidence against its prejudicial effect pursuant to Rule 403. Id. at 221.

Remy argues a number of pornographic images and magazine articles found in his home—State's Exhibits 39-48 and 62-68—were irrelevant, highly prejudicial, and inadmissible under Rule 404(b). Remy's brief accurately summarizes the challenged exhibits as follows: men bound and in leather masturbating; a man ejaculating in a person's mouth; two people having sexual intercourse; a man tied up with a ball gag in his mouth; a penis tied up with string; a man putting his fists in two other men's anuses; a man in leather on his hands and knees; a man hanging upside down while having oral sex with another man; a man wearing a dog mask; a young boy looking at an erect penis; a man wrapped in saran wrap and engaging in oral sex with another man; several pictures of penises; and an article about a sexual fantasy involving a man dressing and acting like a dog. See Brief of Appellant at 11. The State responds that these pornographic images were properly admitted to prove Remy's plan to commit the charged crimes and that Remy was "clearly grooming" H.B. Brief of Appellee at 8.

Prior to the promulgation of the Indiana Rules of Evidence, our supreme court adopted Federal Evidence Rule 404(b) in Lannan v. State, 600 N.E.2d 1334, 1335 (Ind. 1992). In doing so, the court abolished the "depraved sexual instinct" exception that allowed character evidence in sexual assault cases to be admitted to bolster victim credibility and prove action in conformity with a defendant's sexual desires or past acts. Id. Commenting on Lannan, the adoption of Indiana's own Evidence Rule 404(b), and the dismissal of the common law "common scheme or plan" rule in favor of Rule 404(b)'s "plan" exception, Chief Justice Shepard clarified that Rule 404(b) offered "a narrower exception than our old rule, which tended to degenerate into an all-purpose

excuse for admitting pretty much any old prior misconduct." Lay v. State, 659 N.E.2d 1005, 1015 (Ind. 1995) (Shepard, C.J., dissenting).[1] This is the backdrop against which our decision in this case is made. We believe this case presents an example of how a real danger exists that rationales such as "plan" and "grooming" are becoming all-purpose excuses to admit prejudicial evidence in child molestation cases. We must take care to ensure that Rule 404(b)'s exceptions do not swallow the rule.

H.B. testified that Remy showed each of the images to H.B., and the State argues that some of the images are "similar in nature to several of the scenarios that Remy played out with H.B." Br. of Appellee at 8. When the State admitted these challenged exhibits at trial, the only image the State noted was similar to a charged act was the image involving saran wrap and oral sex (State's Exhibit 68). In the State's brief, the State identifies six additional images that it believes are similar to activities that H.B. testified Remy subjected him to. However, three of those images relate to the incident where H.B. was made to put on a dog collar, which is not among the crimes charged, and two depict oral sex, making them cumulative of and less relevant than the saran wrap photo. Therefore, the relevance of those images seems to be negligible. Even assuming all of the images identified by the State on appeal are at least marginally relevant, this leaves ten pornographic images admitted against Remy for no perceivable reason other than to inflame the jury and encourage the "forbidden inference."

---

[1] Although said in dissent, Chief Justice Shepard's opinion on that issue of law was shared by a majority of the court. See Lay, 659 N.E.2d at 1015 (DeBruler, J., concurring); id. (Shepard, C.J., dissenting, joined by Dickson, J.)

As to the State's "grooming" rationale, this court has previously held this is a valid basis for admitting past acts under Rule 404(b). See Piercefield v. State, 877 N.E.2d 1213, 1216 (Ind. Ct. App. 2007), trans. denied. In Piercefield, the court defined "grooming" as "the process of cultivating trust with a victim and gradually introducing sexual behaviors until reaching the point where it is possible to perpetrate a sex crime against the victim." Id. at 1216 n.1 (citation and quotation marks omitted). This court held that evidence of the victim's past massages of the defendant was relevant to show preparation, plan, and grooming, because the massages were demanded by the defendant and used to familiarize the victim with touching and having a more physical relationship with the defendant. Id. at 1216. The court emphasized, however, that this evidence was far less prejudicial than evidence of past sexual activity because the "massage contacts . . . were not criminal by themselves and were not overtly sexual." Id.

On the spectrum of prejudice, we find this case falls somewhere between Piercefield and cases like Greenboam v. State, 766 N.E.2d 1247 (Ind. Ct. App. 2002), trans. denied, which involved evidence of past molestations. There is no question that the pornographic images admitted by the State in this case are "overtly sexual." Cf. Piercefield, 877 N.E.2d at 1216 (implying that evidence of acts that were "overtly sexual" would be far more prejudicial than the massages at issue in Piercefield). Additionally, we note that admission of evidence related to these images may be been evidence of other uncharged criminal conduct: Remy's possession of at least one of the photos—an image of what appears to be an adolescent boy preparing to perform oral sex (State's Exhibit 67)—is potentially criminal by itself to the extent it may be evidence of possession of

child pornography in violation of Indiana Code section 35-42-4-4(c), and Remy's acts of showing these pornographic images to H.B. may also have been criminal dissemination of matter harmful to minors under Indiana Code section 35-49-3-3. Cf. Piercefield, 877 N.E.2d at 1216 (implying that evidence of acts that were "criminal by themselves" would be far more prejudicial than the massages at issue in Piercefield). Because the challenged evidence is overtly sexual and is potentially evidence of uncharged criminal conduct, we find evidence of these images carries a significant danger of unfair prejudice.

As to the relevance of the pornography as evidence of grooming, we note that the record is unclear as to precisely when these images were shown to H.B. Thus, their probative value is further diminished by the fact that we cannot say with any certainty that the pornography was used to groom H.B. in preparation for a sex act yet to be committed.

Because the danger of unfair prejudice accompanying the admission of these pornographic images substantially outweighs their probative value, we conclude the trial court erred by admitting the vast majority of these images. Given our standard of review, the fact that Remy showed the image involving saran wrap and oral sex to H.B., and the image's strong parallel to one of the charged acts, we would conclude the trial court did not abuse its discretion by admitting State's Exhibit 68. However, the remainder of the challenged images should not have been admitted at trial.

Despite our finding error in the trial court's admission of this evidence, we hold that the admission was harmless error. Errors in the admission of evidence are ordinarily disregarded as harmless error unless they affect the substantial rights of a party. Hoglund

v. State, 962 N.E.2d 1230, 1238 (Ind. 2012). In determining whether a party's substantial rights have been affected, we consider the evidence's probable impact on the fact finder. Id. Improper admission of evidence is harmless error "if the conviction is supported by substantial independent evidence of guilt satisfying the reviewing court there is no substantial likelihood the challenged evidence contributed to the conviction." Id. Here, substantial independent evidence of Remy's guilt was presented at trial. Most importantly, H.B. testified to a number of sex acts Remy performed with him, and H.B.'s testimony was substantially corroborated by evidence found in Remy's home, including sex toys described by H.B., anal lube, a butt plug, and a black hose attached to Remy's shower line. Although a danger of prejudice and the possibility of the forbidden inference existed after the admission of pornographic images, we do not believe that the erroneous admission of that evidence requires a new trial here. In this particular case, the evidence corroborating H.B.'s testimony shifts the balance toward harmless error, and we cannot say that the challenged evidence here matches the extreme prejudice that comes with evidence of past acts of molestation. Cf. Greenboam, 766 N.E.2d at 1256-57 (finding reversible error in the admission of testimony in violation of Indiana Evidence Rule 404(b) regarding the defendant's past acts of molestation). Therefore, the trial court's error in this case was harmless error.

## II. Sentence

Next, Remy argues his sentence is inappropriate. Indiana Appellate Rule 7(B) gives appellate courts the authority to revise a defendant's sentence if, "after due consideration of the trial court's decision, the Court finds that the sentence is

inappropriate in light of the nature of the offense and the character of the offender." Our inquiry focuses on the defendant's aggregate sentence, rather than the number of counts, length of the sentence on any individual count, or whether any sentences are concurrent or consecutive. Brown v. State, 10 N.E.3d 1, 8 (Ind. 2014). It is the defendant's burden to persuade the reviewing court that the sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

Remy believes his ninety-five and one-half year sentence is inappropriate in light of the nature of his offenses and his character. Specifically, Remy argues there is no evidence of physical or emotional injury to H.B. and that there was no evidence of significant force used by Remy to molest H.B. Remy also points out that he has no criminal history. In support of his request for a reduced sentence, Remy points to our supreme court's decision in Harris v. State, 897 N.E.2d 927 (Ind. 2008). In Harris, the defendant was convicted of two counts of child molesting, Class A felonies, and was sentenced to consecutive terms of fifty years on each count. Three aggravators were present in Harris: (1) the defendant was in a position of trust; (2) the defendant committed multiple acts of sexual misconduct other than the crimes charged; and (3) the defendant's criminal history. Our supreme court found "the ongoing nature of Harris's crimes coupled with his position of trust sufficiently aggravating to justify enhanced sentences." Id. at 930. However, the court also observed that the two counts of child molestation were identical and involved the same child. Id. And although the defendant had a criminal history, the court found that history sufficiently different in nature and gravity such that it was not a significant aggravator. Id. In the end, our supreme court

held the aggravating circumstances were sufficient to warrant enhanced sentences but not consecutive ones, and the court revised the defendant's sentence to fifty years on each count to be served concurrently. Id.

We believe this case is distinguishable from Harris.[2] That case involved a sentence that gave the maximum on each count and ordered the counts consecutive, while the consecutive sentences in this case were for the advisory terms. Moreover, unlike the two counts in Harris, the five counts in this case are not identical. Although they involve the same victim, the charged acts spanned two years and were based on a variety of appalling and degrading sex acts. Among the aggravators found by the trial court was the "heinous" nature of the activities Remy subjected H.B. to in the commission of his crimes. Transcript at 806. Remy makes no argument that this aggravator is unsupported by the trial evidence, and we recognize that such an aggravator was not present in Harris.

The trial court identified five aggravators here: (1) Remy abused a position of trust with the victim; (2) the number of times the activities occurred; (3) the opportunistic way in which Remy perpetrated the crimes; (4) the many locations in which the crimes occurred; and (5) the heinous nature of the activities to which Remy subjected H.B.[3] Remy's lack of criminal history was the only mitigator. As the States points out, our case

---

[2] Remy also relies on Monroe v. State, 886 N.E.2d 578, 581 (Ind. 2008), where our supreme court held the aggravating circumstances were sufficient to warrant imposing enhanced sentences for child molesting, but the record did not support the trial court's imposition of consecutive sentences. In that case, the court specifically took issue with the fact that the trial court ordered consecutive sentences despite imposing sentences on each individual count below the presumptive sentence, indicating that the trial court believed the mitigators outweighed the aggravators but nonetheless gave consecutive sentences. Id. at 580. Here, the trial court's decision to impose consecutive advisory sentences does not contain a similar internal inconsistency.

[3] On appeal, the State contends that psychological or emotional harm suffered by H.B. weighs against Remy, and the State asserts there is a possibility that H.B. has contracted human papillomavirus. While the State's allegations on these points may be true, the State cites to no evidence in the record supporting them.

law recognizes several of these as valid aggravating factors in child molest cases. See Hart v. State, 829 N.E.2d 541, 544 (Ind. Ct. App. 2005) (stating that "being in a position of trust with the victim is a valid aggravating circumstance"); Newsome v. State, 797 N.E.2d 293, 300 (Ind. Ct. App. 2003) (stating "[r]epeated molestations occurring over a period of time can be an aggravating factor supporting the maximum enhancement."), trans. denied. Remy has not convinced us that his sentence is inappropriate in light of the nature of his offenses and his character.

## Conclusion

We conclude the trial court abused its discretion in admitting all but one of the pornographic images at Remy's trial, but we find that this violation of Rule 404(b) was harmless error. Further, we conclude Remy's sentence is not inappropriate in light of the nature of his offenses and his character. Accordingly, we affirm his convictions and sentence.

Affirmed.

BAKER, J., and KIRSCH, J., concur.