## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 29 2015, 8:55 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Jennifer A. Joas<br>Madison, Indiana | Gregory F. Zoeller<br>Attorney General of Indiana<br><br>Karl M. Scharnberg<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Keith R. Miller,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | April 29, 2015<br><br>Court of Appeals Case No.<br>40A01-1407-CR-296<br><br>Appeal from the Jennings Circuit Court<br><br>The Honorable Jonathan W. Webster, Judge<br><br>Case No. 40C01-1106-FA-261 |

**Crone, Judge.**

## Case Summary

A jury found Keith R. Miller guilty of seven counts, including class A felony robbery resulting in serious bodily injury and class D felony receiving stolen

property. The trial court sentenced him to forty-seven and a half years. Miller claims that the State failed to present sufficient evidence to sustain his convictions. He also challenges his sentence as inappropriate in light of the nature of the offenses and his character. Finding the evidence sufficient and that Miller has failed to establish that his sentence is inappropriate, we affirm.

## Facts and Procedural History

[1] The relevant facts most favorable to the jury's verdict are that in June 2011, Keith Miller was dating Christina Hope Franklin. Miller told Franklin that he had cased out a jewelry store in North Vernon that he thought would be easy to rob. He discussed looking at cheap jewelry first and then more expensive jewelry before knocking out the owner. On June 11, Franklin was arrested when police found drugs and paraphernalia at her home.

[2] On June 14, Miller asked Jamie Costilla for a ride to downtown North Vernon. Once they parked, she did not know where he went, but upon his return ten or fifteen minutes later, he said, "I bet it would be easy to rob that place and knock an old man out." Tr. at 131. On the night of June 15, Miller and Justin Clark stayed with Costilla in a motel room. When Costilla awoke on June 16, Miller and Clark had left with her car.

[3] On the same day, James Pfeiffer, then sixty-one years old, was working alone at his jewelry store in North Vernon. Miller entered the store. Pfeiffer recognized Miller because he had been in the store a few days earlier looking at Fenton glassware. Pfeiffer asked Miller whether he wanted to look at Fenton glassware

again, and Miller said yes. As Pfeiffer began showing Miller the glassware, he noticed Clark standing on the sidewalk in a way that did not feel or look right. Clark entered the store, and Pfeiffer began to feel concerned. Pfeiffer wanted to keep both of the men in his line of sight.

[4] When Miller asked to see items that cost less than fifty dollars, Pfeiffer picked up a vase to return it to the shelf. As he turned, Miller repeatedly struck him on the head with an iron bar. Pfeiffer eventually got on his hands and knees to try to shield himself. When the blows stopped, Pfeiffer turned his head, and Miller sprayed his right eye with an insecticide. As Pfeiffer pulled out his cell phone to call 911, it became covered in blood. He crawled toward the front door and yelled for help.

[5] After Miller hit Pfeiffer, Miller and Clark went from case to case trying to open them. Clark scooped jewelry into a bag, and they ran to the back of the store. When they realized that they were unable to exit through the back door, Clark panicked and dropped the bag. He and Miller ran out the front door and down the alley to Costilla's car. Pfeiffer followed them down the alley. The men got into the car, and Pfeiffer grabbed Miller's neck as Miller was trying to start the car. The car accelerated and dragged Pfeiffer before he lost his grip. The car then ran over both of his arms and his left leg. Miller and Clark eventually wrecked and abandoned Costilla's car and stole two vehicles en route to Texas, where they were apprehended.

[6] When Miller and Clark did not return with her car, Costilla reported it stolen. The police told her that it had been involved in a jewelry store robbery and asked her to watch the store's surveillance camera footage to identify the people in the video. She identified them as Miller and Clark.

[7] During the robbery, Pfeiffer's cornea split, and he continues to have eye problems. He suffered one broken finger bone, a concussion, cuts on his head that required stitches, and headaches that lingered for six months after the attack. Because of his injuries, he was forced to close his store for two weeks.

[8] The State charged Miller with seven counts: class A felony robbery resulting in serious bodily injury, class B felony robbery with a deadly weapon, class C felony battery resulting in serious bodily injury, class D felony receiving stolen property, class A felony aiding robbery resulting in serious bodily injury, class A felony attempted robbery resulting in serious bodily injury, and class A felony aiding attempted robbery resulting in serious bodily injury. The jury convicted Miller on all seven counts. During sentencing, the trial court merged the convictions for Counts II, III, V, VI, and VII with Count I. The trial court sentenced Miller to forty-five years on Count I (class A felony robbery resulting in serious bodily injury to Pfeiffer) and thirty months on Count IV (class D felony receiving stolen property, i.e. Costilla's car), to be served consecutively, for an aggregate sentence of forty-seven and a half years. Miller now appeals.

# Discussion and Decision

## Section 1 – The evidence is sufficient to sustain Miller's convictions.

[9] Miller contends that the State failed to present sufficient evidence to sustain his convictions. In reviewing a challenge to the sufficiency of the evidence, "we neither reweigh the evidence nor assess witness credibility, and will focus on the evidence most favorable to the verdict together with the reasonable inferences that may be drawn therefrom. We will affirm unless no reasonable factfinder could find the elements of the crime proved beyond a reasonable doubt." *Cooper v. State*, 940 N.E.2d 1210, 1213 (Ind. Ct. App. 2011) (citation omitted), *trans. denied*.

[10] Miller first asserts that Pfeiffer's in-court identification of him as the person who committed the robbery is unreliable because Pfeiffer did not see the person who attacked or robbed him. Miller concedes that he failed to object to this identification at trial, but he asserts that the identification resulted in fundamental error. "Fundamental error is error so egregious that reversal of a criminal conviction is required even if no objection to the error is registered at trial." *Robey v. State*, 7 N.E.3d 371, 379 (Ind. Ct. App. 2014) (citation and quotation marks omitted), *trans. denied*. "The standard for fundamental error is whether the error was so prejudicial to the rights of the defendant that a fair trial was impossible. Fundamental error requires prejudice to the defendant." *Id*. (citation omitted).

[11]   A court may consider the following factors when determining whether a witness had an independent basis for the in-court identification: the amount of time the witness was in the presence of the defendant; the distance between the two; the lighting conditions; the witness's degree of attention to the defendant; the witness's capacity for observation; the witness's opportunity to perceive particular characteristics of the perpetrator; the accuracy of any prior description of the perpetrator by the witness; the witness's level of certainty at the pretrial identification; and the length of time between the crime and the identification. *Swigeart v. State*, 749 N.E.2d 540, 544 (Ind. 2001). Pfeiffer testified that he recognized Miller from a previous visit, and the jewelry store's surveillance video shows that they interacted for at least a minute and a half, standing approximately two feet away, before Miller struck Pfeiffer. Pfeiffer testified that he was concerned by the presence of the two men and wanted to keep them in sight. The record suggests that it was a bright sunny day and the store was well-lit. Although Pfeiffer was not asked to identify Miller until trial, which occurred nearly two years after the crime, we agree with the State that Pfeiffer had an excellent opportunity and the capacity to observe him. Based on the foregoing, we conclude that Pfeiffer had an independent basis for his in-court identification of Miller and that the trial court committed no error, let alone fundamental error, in admitting the identification.

[12]   Miller also challenges the testimony of Clark, his accomplice, who testified at trial after being granted use immunity by the State. Miller invokes the incredible dubiosity rule, which is inapplicable because more than one witness

testified regarding his involvement in the crimes and his convictions are also supported by circumstantial evidence. *See Moore v. State*, No. 71S00-1405-LW-361, slip op. at 6 (Ind. Mar. 24, 2015) ("[T]he appropriate scope of the incredible dubiosity rule as utilized in Indiana and other jurisdictions requires that there be: 1) a sole testifying witness; 2) testimony that is inherently contradictory, equivocal, or the result of coercion; and 3) a complete absence of circumstantial evidence."). Miller's argument is simply a request to reweigh evidence and judge Clark's credibility, which we may not do. Having rejected Miller's arguments, we affirm his convictions.

## Section 2 – Miller has failed to establish that his sentence is inappropriate in light of the nature of the offenses and his character.

[13]  Miller asks us to reduce his sentence pursuant to Indiana Appellate Rule 7(B), which provides, "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." "Our inquiry focuses on the defendant's aggregate sentence, rather than the number of counts, length of the sentence on any individual count, or whether any sentences are concurrent or consecutive." *Remy v. State*, 17 N.E.3d 396, 401-02 (Ind. Ct. App. 2014), *trans. denied* (2015). "The nature of offense compares the defendant's actions with the required showing to sustain a conviction under the charged offense, while the character of the offender permits for a broader consideration of the defendant's character." *Anderson v.*

*State*, 989 N.E.2d 823, 827 (Ind. Ct. App. 2013) (citation and internal quotation marks omitted).The defendant bears the burden of persuading us that his sentence is inappropriate. *Remy*, 17 N.E.3d at 402.

[14] "[R]egarding the nature of the offense, the advisory sentence is the starting point the Legislature has selected as an appropriate sentence for the crime committed." *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. Miller was sentenced for a class A felony, which has an advisory sentence of thirty years and a range of twenty to fifty years, Ind. Code § 35-50-2-4, and a class D felony, which has an advisory sentence of one and a half years and a range of six months to three years. Ind. Code § 35-50-2-7. To convict Miller of robbery resulting in serious bodily injury as charged, the State was required to prove that he knowingly or intentionally took property from Pfeiffer by using or threatening the use of force on him, Ind. Code § 35-42-5-1, and that Miller's actions resulted in serious bodily injury, which means bodily injury[1] that causes extreme pain. Ind. Code § 35-31.5-2-292. Here, Miller struck Pfeiffer in the head multiple times with an iron bar and sprayed insecticide in his eye when he intentionally took property from Pfeiffer. Pfeiffer suffered extreme pain and a concussion from Miller's blows to his head, sustained a broken bone in his finger, and continues to suffer from impaired vision. As a result of his injuries, Pfeiffer had to close his store for two weeks

---

[1] Indiana Code Section 35-31.5-2-29 defines bodily injury as any impairment of physical condition, including physical pain.

after the attack. The brutal nature of this robbery does not merit a reduction of Miller's sentence.

[15] As for Miller's character, the record demonstrates that he has a significant criminal history that includes convictions for five felonies and five misdemeanors in addition to the convictions at issue here. His prior offenses include theft by deception, receiving stolen property, possession of cocaine, and driving with a suspended license, and he had a felony auto theft charge pending at the time of sentencing. He committed the current crimes while he was on probation, and he lied to the probation officer who prepared the presentence investigation report about his criminal history, job history, financial situation, and family situation. His criminal history demonstrates that he will not conform his behavior to society's standards and that prior sentences have not deterred him from pursuing new and violent actions without regard for the lives of potential victims. Here, he beat a sixty-one-year-old man in the head with an iron bar, dragged him as he was hanging onto a car, and then ran him over with the vehicle. In sum, Miller has failed to carry his burden of demonstrating that his sentence is inappropriate in light of the nature of the offenses and his character. Therefore, we affirm.

[16] Affirmed.

Brown, J., and Pyle, J., concur.