## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Joelle A. Freiburger
Portland, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Mauricio D. Sharp,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

April 13, 2017

Court of Appeals Case No.
05A05-1610-CR-2284

Appeal from the Blackford
Superior Court

The Honorable John Nicholas
Barry, Judge

Trial Court Cause No.
05D01-1504-F6-95

**Mathias, Judge.**

[1]     Following a jury trial in Blackford Superior Court, Mauricio D. Sharp ("Sharp") was convicted of Level 6 felony resisting law enforcement. Sharp

appeals and argues that the trial court erred in admitting an out-of-court statement he claims was inadmissible hearsay. Concluding that the admission of the statement was, at most, harmless error, we affirm.

## Facts and Procedural History

[2] Before starting his patrol shift on April 15, 2015, Hartford City Police Department Officer Mark McKissack ("Officer McKissack") was informed that the Blackford County Sheriff's Office had received a report that a red Ford Mustang had been stolen in a neighboring county and might be in the Hartford City area. While on patrol that evening, Officer McKissack went to the Hartford Square apartment complex, where two other Hartford City Police officers, Tyler Ingram ("Officer Ingram") and Joel Allred ("Officer Allred") were present. Shortly after he arrived at the apartment complex, Officer McKissack observed a red Ford Mustang, which he thought matched the description of the vehicle that had been reported as stolen, enter the parking lot of the apartment complex.

[3] After a passenger got out of the Mustang, Officer McKissack, who was no more than fifty feet from the vehicle at the time, shouted at the driver of the car, later determined to be Sharp, and told him to stop. Instead of stopping, however, Sharp drove to the exit of the parking lot. Officer Ingram got in his patrol car and drove after the Mustang, with is lights and siren activated. He was soon joined by Officer McKissack and Officer Allred. Officer Ingram caught up with the Mustang approximately half of a city block down the street. Despite the sirens and emergency lights of the police cars following him, Sharp did not pull

the Mustang to the side of the street. However, Sharp did not speed, and he stopped at every stop sign and used his turn signals to indicate when he was preparing to turn.

As this low-speed chase continued, Officer McKissack, who apparently knew Sharp, realized that Sharp was driving to his aunt's home on Franklin Avenue in Hartford City. Indeed, once Sharp arrived at his aunt's home, he stopped the car. The pursuing police officers got out of their vehicles and ordered Sharp to get out of the Mustang. Sharp did so, but instead of lying down on the ground as instructed by the police, he attempted to get in the back seat of the car. At the time, the police did not know what Sharp was doing. Luckily for all involved, the police did not shoot at Sharp. They instead approached Sharp and apprehended him. Only then did the police realize that Sharp's young daughter, approximately four or five years old, was in the back seat. Sharp's aunt came outside and took the child, and the police arrested Sharp.

On April 17, 2015, the State charged Sharp with neglect of a dependent and resisting law enforcement, both as Level 6 felonies. The State later dismissed the neglect charge, and Sharp eventually entered into a plea agreement with the State in which he would plead guilty to resisting law enforcement as a Class A misdemeanor. The trial court rejected this plea agreement as being too lenient, and the case went to a jury trial on December 16, 2015. The jury in this trial was unable to reach a verdict, and the trial court declared a mistrial. A retrial was held on April 20, 2016. At this trial, the State sought to admit testimony regarding the fact that a red Ford Mustang had been reported stolen, thereby

explaining why the police asked Sharp to stop. Sharp objected to this testimony, and the trial court ultimately concluded that it would allow the testimony. The trial court, however, ruled that the prosecution would not be allowed to repeatedly mention the report and that it would admonish the jury not to consider the statement as proof of the matter asserted. *See* Tr. pp. 28-29. Officer McKissack was then permitted to testify that

> Sergeant Johnson took a phone call from the Huntington County Sheriff's Department and it was a report of a possible stolen vehicle. He was given the description – and it was a red Mustang and told us to be on the look-out for what they believed it might be headed to our area.

*Id*. at 30. The trial court then immediately admonished the jury not to consider the report of a stolen vehicle as evidence of Sharp's guilt. *Id*. Later, when Officer McKissack testified that the car driven by Sharp matched the description of the car that had been reported as stolen, the trial court again admonished the jury, stating, "One more time. The Court will admonish the jury that the officer's testimony as to receiving a report of a stolen vehicle is not to be considered as any type of evidence of guilt of the Defendant for the crime under consideration." *Id*. at 32. At the conclusion of the trial, the jury found McKissack guilty as charged.

[6] On May 26, 2016, the trial court sentenced Sharp to one and one-half years, and suspended the sentence save the fifty-six days of credit time McKissack had already served. The trial court also ordered Sharp to serve 180 days of his suspended sentence on probation. Sharp filed a motion to correct error on June

24, 2016, and the trial court held a hearing on the motion on July 27, 2016. The trial court denied the motion to correct error on September 9, 2016. Sharp now appeals.

## Discussion and Decision

[7] Sharp claims that the trial court abused its discretion in admitting certain evidence. Questions regarding the admission of evidence are entrusted to the sound discretion of the trial court. *Boatner v. State*, 934 N.E.2d 184, 186 (Ind. Ct. App. 2010). On appeal, we review the trial court's decision only for an abuse of that discretion. *Id*. A trial court abuses its discretion if its decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Id*.

[8] Sharp claims that the testimony of Officer McKissack regarding the report that a Mustang had been stolen was inadmissible hearsay. Hearsay is defined by Indiana Evidence Rule 801(c) as a statement that is not made by the declarant while testifying at trial or hearing and which is offered into evidence to prove the truth of the matter asserted in the statement. As a general rule, hearsay evidence is inadmissible. *Boatner*, 934 N.E.2d at 186 (citing Evid. R. 802).

[9] Here, even if we assume that the statement at issue was inadmissible hearsay, we are unable to say that the admission of the statements at issue in this case constituted reversible error. Errors in the admission of evidence are ordinarily disregarded as harmless error unless they affect the substantial rights of a party. *Remy v. State*, 17 N.E.3d 396, 401 (Ind. Ct. App. 2014) (citing *Hoglund v. State*,

962 N.E.2d 1230, 1238 (Ind. 2012)). In determining whether a party's substantial rights have been affected, we consider the evidence's probable impact on the jury. *Id*. Improper admission of evidence is harmless error if the conviction is supported by substantial independent evidence of guilt satisfying the reviewing court there is no substantial likelihood the challenged evidence contributed to the conviction. *Id*.

[10] In Sharp's jury trial, the evidence that the police had received a report of a stolen red Mustang was mentioned only twice, and very briefly at that. The trial court did not permit the State to harp repeatedly on the fact that the car had been reported stolen. The trial court also admonished the jury after both instances in which the report of the stolen car was mentioned.[1] On top of this, the evidence of Sharp's guilt was overwhelming. In addition to the testimony of the police officers that Sharp refused to stop the car even though he was being followed by police cars with their lights and sirens activated, there was video evidence showing Sharp driving the car and refusing to stop. Under these facts and circumstances, we can confidently say that there is no substantial likelihood that the challenged evidence contributed to the conviction.

---

[1] Sharp claims that the trial court's admonishment was insufficient, citing *Maxey v. State*, 730 N.E.2d 158, 162 (Ind. 2000), in which our supreme court held that if an officer's "course of police work" testimony consists solely of inadmissible evidence, the danger of unfair prejudice might exceed any probative value regardless of a trial court's repeated and strong admonishments to a jury. However, the court nevertheless held that the admission of the evidence was, in that case, harmless. *Id*. The same is true here, i.e., regardless of whether the admonishment was sufficient to minimize the danger of unfair prejudice for purposes of admissibility, the admission of the statement was harmless given the other overwhelming evidence of Sharp's guilt.

Affirmed.

Baker, J., and Pyle, J., concur.