## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 28 2020, 12:29 pm

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Elizabeth A. Deckard
Columbia City, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tina L. Mann
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Matthew S. Reed,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | October 28, 2020<br><br>Court of Appeals Case No.<br>20A-CR-354<br><br>Appeal from the Whitley Circuit Court<br><br>The Honorable Matthew J. Rentschler, Judge<br><br>Trial Court Cause No.<br>92C01-1812-F1-160 |

**Tavitas, Judge.**

# Case Summary

[1] Matthew Reed appeals his convictions for ten counts of child molesting, Level 1 felonies. We affirm.

# Issues

[2] Reed raises three issues, which we consolidate and restate as:

    I.    Whether the trial court properly admitted certain evidence.

    II.    Whether the evidence is sufficient to sustain Reed's convictions for Counts VI through X.

# Facts

[3] B.R. was born in early August 2009. B.R. was removed from her mother's care and, in approximately 2015, B.R. started living in South Whitley with her father, Reed; her step-mother, Nicole; and Reed's elderly grandmother.

[4] In the fall of 2016, Jessica Herb, the school counselor at B.R.'s elementary school, began working with B.R. regarding B.R.'s behavioral issues.[1] In August 2018, nine-year-old B.R. was in third grade. On August 30, 2018, Herb and B.R. ate lunch in Herb's office, and B.R. was "doodling and doing math" on Herb's whiteboard. Tr. Vol. II p. 246. B.R. said, "Mrs. Herb, can I tell you

---

[1] The behavioral issues included B.R. stealing food, losing control of her emotions, animalistic behaviors, and inappropriate physical boundary issues.

something, but you might think that it's a little gross." *Id.* Herb responded, "sure, you know, okay." *Id.* B.R. then said, "I can't tell you but I'm going to draw it." *Id.* B.R. drew a picture on the whiteboard of a person on hands and knees with a penis touching the person's butt area. B.R. said, "that's my butt," and Herb asked what the penis was. *Id.* at 248. B.R. said, "it's a bad word," but volunteered to write it. *Id.* at 249. B.R. then drew an arrow to the penis and wrote, "di\*\*." *Id.* Herb asked, "Who's private part is that?", and B.R. responded, "My dad." *Id.* B.R. said that the abuse happened in her house and in her room sometimes. B.R. said the abuse hurt but "not as much as here," and motioned to her vaginal area. *Id.* B.R. was uncomfortable and erased the whiteboard quickly. After B.R. left the room, Herb recreated B.R.'s drawing. Herb immediately contacted the Department of Child Services ("DCS") and law enforcement.

[5] The same day, Detective Lorrie Freiburger, a detective with the Fort Wayne Police Department and forensic interviewer with the Dr. Bill Lewis Center for Children, interviewed B.R. B.R. told Detective Freiburger that Reed does "gross stuff" to B.R.; Reed puts his "di\*\*" in her "pee-pee" and butt, and "it really hurts"; "water" comes out of Reed's penis; Reed would lick his finger, put it in B.R.'s vagina, and put his finger back in his mouth; Reed put his penis in B.R.'s mouth, and Reed's hair got in B.R.'s mouth; when Reed's penis was in B.R.'s mouth, Reed's hands touched B.R.'s butt and vagina; and Reed put his mouth on B.R.'s "pee-pee." State's Exhibit 5. Reed also showed B.R. pornographic videos on his cell phone of a girl putting a penis in her mouth.

[6]     B.R. relayed to Detective Freiburger that the abuse happened in B.R.'s bedroom and Reed's bedroom and that Reed also put his penis in B.R.'s mouth on the stairs leading to her bedroom. Further, Reed almost broke B.R.'s bed during the abuse, so B.R. asked Reed to stay off her bed. Reed told B.R. not to tell anyone about the abuse. B.R. said that she could not recall the first time the abuse happened. B.R. said the abuse happened when she was nine years old and in the third grade, but the abuse also happened when she was "littler." *Id.* B.R. later said that the abuse last happened when she was nine years old; that the abuse did not happen when she was eight years old; but it happened when she was younger.

[7]     Leslie Cook, a sexual assault nurse examiner at the Fort Wayne Sexual Assault Treatment Center in Fort Wayne, conducted a sexual assault examination of B.R. B.R. reported to Nurse Cook the following:

> "About my dad? He said it was a secret. We have to keep it away from her (clarify: "mommy") because we'll get in trouble. I'm scared because there's some redness (points to [female sex organ]) & it really hurts. Daddy used his thing—di**—and got it in my pee-pee and messed around with it, with his hand too— messing around with it (patient demonstrates by moving her fingers in a scratching like motion). And he got it in my butt— yuck! (Clarifies "his di**") it felt like there was skin coming off the sides of my butt. He put his di** in my mouth too. I got a hairball & puked it out on the steps. And it was hair from my dad's di**." It was black and my dad's hair is black. Are we done I'm tired. . . Will you tell my dad to stop this because I really don't like it, I really don't.

State's Exhibit 3; Tr. Vol. III pp. 50-51. Nurse Cook found no injuries on B.R. during her examination.

[8] The State charged Reed with ten counts of child molesting, all Level 1 felonies, as follows:

    I.    Child molesting by sexual intercourse for Reed's actions between July 1, 2018, and August 30, 2018.

    II.    Child molesting by anal intercourse for Reed's actions between July 1, 2018, and August 30, 2018.

    III.    Child molesting for acts involving B.R.'s mouth and Reed's penis for Reed's actions between July 1, 2018, and August 30, 2018.

    IV.    Child molesting for the penetration of B.R.'s sex organ by an object between July 1, 2018, and August 30, 2018.

    V.    Child molesting for acts involving Reed's mouth and B.R.'s sex organ between July 1, 2018, and August 30, 2018.

    VI.    Child molesting by sexual intercourse for Reed's actions between October 1, 2015, and June 30, 2018.

    VII.    Child molesting by anal intercourse for Reed's actions between October 1, 2015, and June 30, 2018.

    VIII.    Child molesting for acts involving B.R.'s mouth and Reed's penis for Reed's actions between October 1, 2015, and June 30, 2018.

> IX.   Child molesting for the penetration of B.R.'s sex organ by an object between October 1, 2015, and June 30, 2018.
>
> X.   Child molesting for acts involving Reed's mouth and B.R.'s sex organ between October 1, 2015, and June 30, 2018.

In June 2019, the State filed a notice of intent to offer protected person testimony pursuant to Indiana Code Section 35-37-4-6[2] during the trial,

---

[2] Indiana Code Section 35-37-4-6 provides in part:

    (a)    This section applies to a criminal action involving the following offenses where the victim is a protected person under subsection (c)(1) or (c)(2):

    (1) Sex crimes (IC 35-42-4).

* * * * *

    (c)    As used in this section, "protected person" means:

    (1) a child who is less than fourteen (14) years of age;

* * * * *

    (d)    A statement or videotape that:

    (1) is made by a person who at the time of trial is a protected person;

    (2) concerns an act that is a material element of an offense listed in subsection (a) or (b) that was allegedly committed against the person; and

    (3) is not otherwise admissible in evidence;

    is admissible in evidence in a criminal action for an offense listed in subsection (a) or (b) if the requirements of subsection (e) are met.

    (e)    A statement or videotape described in subsection (d) is admissible in evidence in a criminal action listed in subsection (a) or (b) if, after notice to the defendant of a hearing and of the defendant's right to be present, all of the following conditions are met:

    (1) The court finds, in a hearing:

        (A) conducted outside the presence of the jury; and

        (B) attended by the protected person in person or by using closed circuit television testimony as described in section 8(f) and 8(g) of this chapter;

    that the time, content, and circumstances of the statement or videotape provide sufficient indications of reliability.

    (2) The protected person:

including a recording of B.R.'s forensic interview; B.R.'s statements at the Fort Wayne Sexual Assault Treatment Center; and B.R.'s statements to Herb. After a hearing, at which B.R. and several others testified, the trial court found that "B.R. testifying in the physical presence of [Reed] would cause her to suffer emotional distress such that she would be unable to effectively communicate."

> (A) testifies at the trial; or
>
> (B) is found by the court to be unavailable as a witness for one (1) of the following reasons:
>
>> (i) From the testimony of a psychiatrist, physician, or psychologist, and other evidence, if any, the court finds that the protected person's testifying in the physical presence of the defendant will cause the protected person to suffer serious emotional distress such that the protected person cannot reasonably communicate.
>>
>> (ii) The protected person cannot participate in the trial for medical reasons.
>>
>> (iii) The court has determined that the protected person is incapable of understanding the nature and obligation of an oath.
>
> (f) If a protected person is unavailable to testify at the trial for a reason listed in subsection (e)(2)(B), a statement or videotape may be admitted in evidence under this section only if the protected person was available for cross-examination:
>
> (1) at the hearing described in subsection (e)(1); or
>
> (2) when the statement or videotape was made.
>
> * * * * *
>
> (h) If a statement or videotape is admitted in evidence under this section, the court shall instruct the jury that it is for the jury to determine the weight and credit to be given the statement or videotape and that, in making that determination, the jury shall consider the following:
>
> (1) The mental and physical age of the person making the statement or videotape.
>
> (2) The nature of the statement or videotape.
>
> (3) The circumstances under which the statement or videotape was made.
>
> (4) Other relevant factors.
>
> (i) If a statement or videotape described in subsection (d) is admitted into evidence under this section, a defendant may introduce a:
>
> (1) transcript; or
>
> (2) videotape;
>
> of the hearing held under subsection (e)(1) into evidence at trial.

Appellant's App. Vol. II p. 62. The trial court concluded that the requirements of Indiana Code Section 35-37-4-6 were met and that the State was permitted to "present evidence of the child's statements to the school counselor, the sexual assault nurse examiner, and the videotape of B.R.'s forensic interview to the jury in the trial of this matter." *Id.* at 63.

[10] At Reed's December 2019 jury trial, B.R. did not testify. Herb, Detective Freiburger, and Nurse Cook testified as to B.R.'s statements. The video of B.R.'s forensic interview and the video of Reed's attorney cross-examining B.R. at the protected person hearing were played for the jury. Reed objected to portions of Detective Freiburger's testimony as "impermissible vouching" and objected that Detective Freiburger's testimony improperly commented on Reed's cross-examination of B.R. at the protected person hearing. Tr. Vol. III. 99. The trial court overruled the objections. The State later sought to admit a photograph of anal lubricant found in a cardboard box beneath a bed in the downstairs bedroom of Reed's house during the execution of a search warrant. Reed objected to the admission of the photograph, but the trial court overruled the objection.

[11] The jury found Reed guilty of all ten counts, and the trial court sentenced Reed to an aggregate sentence of fifty years in the Indiana Department of Correction. Reed now appeals.

# Analysis

## *I. Admission of Evidence*

[12] Reed challenges the admission of certain evidence during his trial. We review challenges to the admission of evidence for an abuse of the trial court's discretion. *Fansler v. State*, 100 N.E.3d 250, 253 (Ind. 2018). In those instances, we will reverse only where the decision is clearly against the logic and effect of the facts and circumstances. *Id.*

### *A. Detective Freiburger's Alleged Vouching*

[13] Reed argues that Detective Freiburger's testimony was inadmissible because she vouched for B.R.'s credibility. Vouching testimony is specifically prohibited under Indiana Evidence Rule 704(b), which states: "Witnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions." "Such vouching testimony is an invasion of the province of the jurors in determining the weight they should place upon a witness's testimony." *Carter v. State*, 31 N.E.3d 17, 29 (Ind. Ct. App. 2015), *trans. denied*. "It is essential that the trier of fact determine the credibility of the witnesses and the weight of the evidence." *Id.*

[14] In *Hoglund v. State*, 962 N.E.2d 1230, 1231 (Ind. 2012), our Supreme Court addressed the issue of vouching and held that "testimony amounting to the equivalent that a witness believes the child is telling the truth is inconsistent with our rules of evidence." The Court held a question that "necessarily

requires the witness to pass judgment on [the child's] allegations, or 'story' . . . invites direct vouching of the child witness' allegations regardless of the child's motives." *Hoglund*, 962 N.E.2d at 1237-38. The Court further held that "[n]o witness, whether lay or expert, is competent to testify that another witness is or is not telling the truth." *Id.*

[15] Here, in the first exchange at issue, Detective Freiburger testified as follows:

> Q. Will children, in your experience as a forensic interviewer or your time with kids, will they ever say they don't remember?
>
> A. Yes.
>
> Q. Okay. Is that a fairly [ ], common device?
>
> A. Right. [ ]
>
> Q. Is that a fairly common device?
>
> A. Yes.
>
> Q. Okay. Can you explain please?
>
> A. [ ] (affirmative answer). When I'm doing a forensic interview with a child and they start telling me I don't remember and if I start hearing it two (2) or three (3) times, especially right in a row, my usual, my follow-up question to that would be, "Do you not remember or do you just not want to talk about it?" [ ] [W]hen kids tell you I don't remember, that is one of the most common ways of saying I don't want to talk about . . . something.

Tr. Vol. III p. 98.

[16] Reed notes that the State presented this testimony "almost immediately after the jury watched Mr. Reed's cross-examination of B.R. during the protected person hearing" and that B.R. frequently answered Reed's cross-examination questions with "I don't remember." Appellant's Br. p. 16. Reed claims that the "timing of the exchange bolsters B.R.'s credibility to the jury." *Id.*

[17] We conclude that Detective Freiburger's testimony did not constitute vouching as analyzed by *Hoglund* or violate Indiana Evidence Rule 704(b). Detective Freiburger did not mention B.R. during this particular testimony or make any statement or express any opinion regarding the truth or falsity of B.R.'s allegations. Rather, Detective Freiburger was merely commenting on general methods of questioning children. We have found that such generalized testimony does not constitute vouching. *See Carter*, 31 N.E.3d at 29 (holding that the forensic interviewer's testimony did not constitute impermissible vouching where she did not express opinions on the victim's credibility and her testimony was broad and generalized); *see also Baumholser v. State*, 62 N.E.3d 411 (Ind. Ct. App. 2016) (holding that the forensic interviewer's testimony that victims of child molesting often delay disclosure was "a statement about how victims of child molesting behave in general," not improper vouching), *trans. denied*. The trial court properly admitted this testimony.

[18] As for the timing of the testimony and the playing of B.R.'s cross-examination testimony from the protected person hearing, the State properly notes that Reed

requested that the video of B.R.'s cross-examination be played during Detective Freiburger's testimony immediately after the video of B.R.'s forensic interview. Reed cannot now complain that the timing created a vouching issue. *See Batchelor v. State*, 119 N.E.3d 550, 556 (Ind. 2019) (holding that "invited error typically forecloses appellate review altogether" and a "party will not be permitted to take advantage of errors which he himself committed or invited or induced the trial court to commit, or which were the natural consequences of his own neglect or misconduct").

[19] In the second exchange at issue, Detective Freiburger on direct examination testified:

> Q. [ ] [D]uring that examination of B.R. by Mr. Baldwin, [ ] that examination was clearly not conducted in a [ ] forensic interview setting, was it?
>
> A. It was not.
>
> Q. Why do you conduct that, the child interviews in an interview center?
>
> A. Because they're, they're neutral. [ ] [T]here's a format that we follow that's been accredited through the court system. It's, uh, just the child and I interacting and it allows the child the ability to express themselves verbally and non-verbally in a child-friendly appropriate way.

Tr. Vol. III p. 101.

Reed argues that Detective Freiburger's comment is a "direct assessment of another witness's testimony" and that her testimony gave the jury "the impression that the forensic interview is sanctioned by the court system . . . ." Appellant's Br. p. 17. We disagree. Detective Freiburger did not comment on B.R.'s demeanor or truthfulness in the forensic interview as compared to her cross-examination during the protected person hearing. Again, Detective Freiburger was commenting on methods of interviewing children in general, not vouching for B.R. Reed could have cross-examined Detective Freiburger regarding her comments that the forensic interview process is "accredited through the court system." Tr. Vol. III p. 101. The trial court did not abuse its discretion by admitting this testimony.

### B. Detective Freiburger's Alleged Comment on Reed's Right to Cross-Examination

Next, Reed argues that, in the second exchange at issue above, Detective Freiburger improperly commented on Reed's right to cross-examine B.R. According to Reed, Detective Freiburger "criticized the very nature of the cross-examination—that it does not occur in a forensic interview center, implying that it does not lend itself to the child expressing him or herself." Appellant's Br. p. 18. Reed cites no authority for the proposition that his right to cross-examination can be violated by a witness commenting on the nature of cross-examination. *See* Ind. Appellate Rule 46(A)(8) (requiring argument to be supported by cogent reasoning and citations to authorities).

The Sixth Amendment of the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him." Similarly, Article 1, Section 13 of the Indiana Constitution provides: "In all criminal prosecutions, the accused shall have the right . . . to meet the witnesses face to face." B.R. was cross-examined by Reed's attorney at the protected person hearing as authorized by Indiana Code Section 35-37-4-6, and the video of that cross-examination was admitted at the trial and shown to the jury along with the video of B.R.'s forensic interview. We conclude that the trial court did not abuse its discretion by admitting this testimony over Reed's objection.

### C. Lubricant

Next, Reed argues that the trial court abused its discretion by admitting evidence that Reed possessed anal lubricant. Reed contends that this evidence was irrelevant. Indiana Evidence Rule 401 provides: "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Irrelevant evidence is inadmissible. *See* Ind. Evidence Rule 402. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Ind. Evidence Rule 403.

In support of Reed's argument that the admission of the photograph of anal lubricant was improper, Reed relies on *Remy v. State*, 17 N.E.3d 396 (Ind. Ct.

App. 2014), *trans. denied*.  There, during his trial for child molestation, the defendant objected to admission of several pornographic images found in his home.  The defendant argued that the pornographic images were "irrelevant, highly prejudicial, and inadmissible under" Indiana Evidence Rule 404(b), which pertains to evidence of other crimes, wrongs, or other acts.  *Remy*, 17 N.E.3d at 399.  One of the images had "strong parallel[s]" to one of the charged acts, and we concluded that the trial court properly admitted that image.  *Id.* at 401.  With respect to the remainder of the images, however, we concluded that the danger of unfair prejudice substantially outweighed their probative value.  Accordingly, our Court found that the remainder of the photographs should not have been admitted at trial.

[25]     We do not find *Remy* persuasive here.  Reed argues that B.R. never mentioned the use of anal lubricant, and there was no connection between B.R. and the lubricant.  B.R., however, claimed that Reed repeatedly inserted his penis into her anus, along with other sexual activity.  Nurse Cook testified that she found no injuries to B.R. during her examination.  Nurse Cook explained several reasons why "as many as ninety-five (95) percent of children will have completely normal examinations.  And that would [ ] be of the female sex organ [ ] and certainly it can be as high as ninety-nine (99) percent of children will not [sic] injury [ ] if there's been an anal penetration."  Tr. Vol. III p. 36.  Over Reed's objection, Nurse Cook also testified that lubricant can prevent injury.  Later, the State sought to admit a photograph of anal lubricant found in a cardboard box beneath a bed in the downstairs bedroom of Reed's house

during the execution of a search warrant. Reed objected to the admission of the photograph, but the trial court overruled the objection.

[26] The lubricant was relevant to provide a possible explanation for B.R.'s lack of injuries. Moreover, Reed fails to explain how the probative value of the lubricant was substantially outweighed by a danger of unfair prejudice. We conclude that the danger of unfair prejudice is minimal here. There was minimal testimony and evidence presented regarding the lubricant. Under these circumstances, the trial court did not abuse its discretion by admitting the photograph of the lubricant.

## II. Sufficiency of the Evidence

[27] Reed also challenges the sufficiency of the evidence to support his convictions for Counts VI through X. Sufficiency of the evidence claims "warrant a deferential standard, in which we neither reweigh the evidence nor judge witness credibility." *Powell v. State*, 151 N.E.3d 256, 262 (Ind. 2020). We consider only the evidence supporting the judgment and any reasonable inferences drawn from that evidence. *Id.* We will affirm a conviction if there is substantial evidence of probative value that would lead a reasonable trier of fact to conclude that the defendant was guilty beyond a reasonable doubt. *Id.*

[28] The offense of Level 1 felony child molesting is governed by Indiana Code Section 35-42-4-3(a), which provides: "A person who, with a child under fourteen (14) years of age, knowingly or intentionally performs or submits to sexual intercourse or other sexual conduct (as defined in IC 35-31.5-2-221.5)

commits child molesting . . . ." The offense is a Level 1 felony if "it is committed by a person at least twenty-one (21) years of age." Ind. Code 35-42-4-3(a)(1). In Counts I through V, the State charged Reed with child molesting as Level 1 felonies for Reed's actions between July 1, 2018, and August 30, 2018. In Counts VI through X, the State charged Reed with child molesting as Level 1 felonies for Reed's actions between October 1, 2015, and June 30, 2018.

[29] Reed argues that the evidence is insufficient to sustain his convictions in Counts VI through X because the evidence does not establish any molestations occurred between October 1, 2015, and June 30, 2018. B.R.'s statements regarding the timing of the offenses were admittedly imprecise. We do not, however, find that fatal to the sufficiency of the evidence here.

[30] Indiana Code Section 35-34-1-2(a)(5) requires a charging information to state "the date of the offense with sufficient particularity to show that the offense was committed within the period of limitations applicable to that offense." Here, the statutory period of limitations is not an issue—a prosecution for a Level 1 felony child molesting must be commenced before the alleged victim reaches thirty-one years of age, and B.R. was nine years old when this prosecution commenced. Ind. Code § 35-41-4-2(c), (e).

[31] Moreover, Indiana Code Section 35-34-1-2(a)(6) requires the charging information to state "the time of the offense as definitely as can be done if time is of the essence of the offense." It is well-established that, where time is not of the essence of the offense, "the State is not confined to proving the commission

on the date alleged in the affidavit or indictment, but may prove the commission at any time within the statutory period of limitations." *Love v. State*, 761 N.E.2d 806, 809 (Ind. 2002). Time is not of the essence in child molesting cases. *Id.* In such cases, "the exact date is only important in limited circumstances, such as where the victim's age at the time of the offense falls at or near the dividing line between classes of felonies." *Id.*

[32]  The important age for determining levels of felonies in child molesting cases is fourteen. *Compare* Ind. Code § 35-42-4-3 (defining child molesting as occurring with a child under the age of fourteen years), and Ind. Code § 35-42-4-9 (defining sexual misconduct with a minor as occurring with a child at least fourteen years of age).[3] B.R. testified that the molestations occurred when she was nine years old and younger. Therefore, the precise dates of the offenses are not of the essence and are not material elements of the crimes.

[33]  Reed also argues that B.R.'s claims were incredibly dubious. Application of the incredibly dubiosity doctrine requires that there be: "1) a sole testifying witness; 2) testimony that is inherently contradictory, equivocal, or the result of coercion; and 3) a complete absence of circumstantial evidence." *Moore v. State*,

---

[3] At the time of these offenses, Indiana Code Section 35-42-4-9(a) provided, in part: "A person at least eighteen (18) years of age who, with a child at least fourteen (14) years of age but less than sixteen (16) years of age, performs or submits to sexual intercourse or other sexual conduct (as defined in IC 35-31.5-2-221.5) commits sexual misconduct with a minor, a Level 5 felony." Indiana Code Section 35-42-4-9(a) was amended effective July 1, 2019, after the commission of these offenses, and now provides, in part: "A person at least eighteen (18) years of age who knowingly or intentionally performs or submits to sexual intercourse or other sexual conduct (as defined in IC 35-31.5-2-221.5) with a child less than sixteen (16) years of age, commits sexual misconduct with a minor, a Level 5 felony."

27 N.E.3d 749, 756 (Ind. 2015). "[W]hile incredible dubiosity provides a standard that is 'not impossible' to meet, it is a 'difficult standard to meet, [and] one that requires great ambiguity and inconsistency in the evidence.'" *Id.* (quoting *Edwards v. State*, 753 N.E.2d 618, 622 (Ind. 2001)). "'The testimony must be so convoluted and/or contrary to human experience that no reasonable person could believe it.'" *Id.* (quoting *Edwards*, 753 N.E.2d at 622). A conviction of child molesting may rest on the uncorroborated testimony of the victim. *Young v. State*, 973 N.E.2d 1225, 1227 (Ind. Ct. App. 2012), *trans. denied*.

[34] B.R. turned nine years old in early August 2018, and was in the third grade when she disclosed the abuse to Herb on August 30, 2018. During her forensic interview, B.R. said that she did not know the first time the abuse happened. B.R. said the abuse happened when she was nine years old and in third grade, but the abuse also happened when she was "littler." State's Exhibit 5. B.R. later said that the abuse last happened when she was nine years old; that it did not happen when she was eight years old; but that it happened when she was younger. B.R. described multiple episodes of sexual acts, including vaginal intercourse, anal intercourse, Reed placing his fingers in her vagina, Reed placing his penis in B.R.'s mouth, and Reed placing his mouth on B.R.'s vagina. Although B.R. was unclear on the exact timing of the abuse, time is not of the essence here.

[35] B.R.'s testimony was age appropriate and was not inherently contradictory, equivocal, or the result of coercion. Accordingly, the incredible dubiosity

doctrine does not apply here. Reed's argument is merely a request that we reweigh the evidence and judge the credibility of witnesses, which we cannot do. *See Powell*, 151 N.E.3d at 262. The evidence is sufficient to sustain Reed's convictions in Counts VI through X.

## Conclusion

[36] The trial court properly admitted Detective Freiburger's testimony and the photograph of the anal lubricant. The evidence was sufficient to sustain Reed's convictions in Counts VI through X. Accordingly, we affirm.

[37] Affirmed.

Kirsch, J., and Pyle, J., concur.